Filed 2/24/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of RAUL and INGRID OBRECHT. | H040827 <br> (Santa Cruz County <br> Super. Ct. No. FL035136) |
| RAUL OBRECHT, <br><br>    Appellant, <br><br>        v. <br><br> INGRID OBRECHT, <br><br>    Respondent. | |

In this dissolution of marriage proceeding, appellant Raul Obrecht appeals from a default judgment requiring him to pay spousal support and attorney fees to his former wife, respondent Ingrid Obrecht.[1]  The appeal primarily revolves around the question whether Raul's appearance at a hearing on a motion to enforce prior orders constituted a general appearance, such that the court acted properly in denying his later motion to quash service for lack of personal jurisdiction.  A second issue involves the effect of untimely notice of an earlier hearing, and whether Raul forfeited his objections to that notice by failing to raise them at the earliest possible time.  A further question is whether the trial court erred by finding that Ingrid had satisfactorily established that she was a

---

[1]  For purposes of readability, and intending no disrespect, we will refer to the parties by their first names.

California resident so as to confer subject matter jurisdiction on the court. Finally, we consider whether the court erred by entering a default judgment against Raul while his petition to set aside the denial of his motion to quash was pending before this court.

We have concluded that (1) in the absence of a reporter's transcript, Raul's appearance must be presumed to have constituted a general submission to the court's jurisdiction over his person; (2) he forfeited his objection to the untimely hearing notice by waiting several months to bring up the issue; (3) the absence of a reporter's transcript also prevents Raul from overcoming the presumption of correctness with respect to the court's finding of residency; and (4) Raul's petition for relief in this court was effective to hold open his time to plead, such that the trial court erred by directing the entry of default while the petition was pending. We therefore reverse with instructions to set aside the default and default judgment and to permit Raul to file a responsive pleading.

### BACKGROUND

Raul and Ingrid were married in 1978 in Santa Cruz County. The couple had two children, born in 1982 and 1985. In 1993, the family moved to Chile, where Ingrid had apparently been born, although she had become a naturalized American citizen in 1971.

Ingrid and Raul separated on April 1, 1995. In August 1996, Ingrid filed a petition in Santa Cruz County for dissolution of marriage. Although the court issued a judgment of dissolution, Ingrid successfully moved several months later to vacate the judgment.[2] However, the couple lived mostly apart after their original separation in 1995. Since 2010, Raul has resided in Depew, New York and has maintained little contact with California or Ingrid.

---

[2] Except as relied upon for the recitals in this paragraph, appellant's request for judicial notice of documents from the 1996 proceedings is denied for want of relevance to any issue in this appeal.

On November 7, 2012, Ingrid filed a second petition in Santa Cruz for dissolution of marriage. Accompanying the petition was a request for an order awarding attorney fees, costs, and spousal support, with a hearing set for December 7. On November 8, Ingrid's attorney mailed the summons, petition, and supporting papers to Raul at a New York address. Raul signed an acknowledgment of receipt on December 4. Additionally, according to a certificate of substitute service, an Erie County Deputy Sheriff posted copies of the summons and petition on Raul's door and mailed additional copies to him.

Raul did not appear at the December 7 hearing. At Ingrid's request, the court continued the matter to January 8, 2013. Ingrid later declared that she had sought the continuance at Raul's request. However, Raul again failed to appear at the January 8 hearing. At its conclusion, the trial court ordered him to pay $1,573 per month in spousal support commencing November 7, 2012, plus $5,000 in attorney fees. On January 30, the court issued an order garnishing Raul's wages in the amount of $1,573 per month.

On April 2, 2013, Ingrid filed a request for an order determining Raul's arrearages on payments already ordered. The request was set to be heard on April 29. In support of the request Ingrid asserted that she had received payment of $1,693.20, leaving $7,4670.20 in delinquent support, plus interest of $198.22, for a total arrearage of $7,628.44. Copies of the moving papers were express-mailed to Raul on April 2.

Raul personally appeared on his own behalf at the April 29 hearing, which was not reported. After the hearing the court (1) ruled that the "previous order for spousal support is valid," (2) awarded Ingrid "arrears to date" of $7628.44, and (3) directed Raul to "pay $100 monthly toward arrears." According to the order, the court, further "advised" Raul that he "must file a response if he wishes to contest this matter, and should seek legal advice."

Three months later, on July 22, 2013, Raul moved to quash service of process for lack of personal and in rem jurisdiction and to set aside the orders of January 8, 2013 and

3

April 29, as well as the resulting garnishment.  In the supporting declaration, Raul asserted that Ingrid had not lived in California for six months prior to the filing of her petition; that she "has lived and continues to live in Chile since . . . 2000 or 2001"; and that she "came to the State of California solely to file the dissolution and then went back to Chile where she continues to reside."  He asserted that jurisdiction could be laid in New York based on his residency, and that he would "file a petition to dissolve our marriage there."  He filed such a petition on August 15, 2013.

On September 9, 2013, Ingrid filed written opposition to the motion to quash.  She introduced evidence showing her presence in Santa Cruz County for at least part of the six months prior to her filing of the petition.  According to the court's minute order, she also testified on the subject of residency at the September 27 hearing—which, again, was not reported.  The court found that Ingrid satisfied the residency requirements and also that Raul had submitted to the court's jurisdiction when he "appeared and argued against the Request for Order" at the April 29 hearing.  Accordingly, the court denied the motion to quash.  It directed the parties to "serve and file their preliminary declarations of disclosure."  It specifically directed Raul to "file a response or his default will be taken."

On December 16, the court conducted a status conference at which it was advised that Raul had, a month earlier, filed a petition in this court seeking to set aside the denial of his motion to quash.  Noting that no stay had been issued, the trial court again directed the parties to "file and serve their income & expense declarations and preliminary disclosures," and further directed Ingrid to "file and serve her request to enter default."  On that same day, counsel for Raul wrote to the court contending that the petition for extraordinary relief had extended his time to file a responsive pleading pursuant to "CCP 418(c)," presumably meaning Code of Civil Procedure section 418.10, subdivision (c).

4

On December 7, 2013, counsel for Ingrid filed a request to enter default. The clerk entered Raul's default that same day.

On January 9, 2014, the court signed a judgment for dissolution, which was filed on January 23, 2014. The judgment (1) ordered Raul to pay spousal support in the amount of $1,573 per month beginning November 7, 2012; (2) entered an earnings assignment order; (3) ordered Ingrid to prepare a qualified domestic relations order dividing Raul's pension; (4) ordered Raul to pay $11,516 plus interest in delinquent spousal support; and (5) confirmed the award of attorney fees made by the court on January 8, 2013.

Raul filed a timely notice of appeal on March 21, 2014.

**DISCUSSION**

## I. Personal Jurisdiction

### A. General Appearance

Raul maintains that there was no basis for the trial court's exercise of personal jurisdiction over him because he lacks the requisite contacts with California to be haled into court here. Ingrid maintains that Raul submitted to the court's jurisdiction by making a general appearance on April 29, 2013, when he appeared and argued "against the issuance of the January 8, 2013 orders and the imposition of a payment on the arrearages." The trial court adopted this view, ruling that "because [Raul] appeared and argued against the Request for Order brought by [Ingrid] on April 29, 2013, . . . the court has personal jurisdiction over him."

"A general appearance occurs when the defendant takes part in the action or in some manner recognizes the authority of the court to proceed." (*Dial 800 v. Fesbinder* (2004) 118 Cal.App.4th 32. 52.) Such participation operates as consent to the court's exercise of jurisdiction in the proceeding. "Unlike jurisdiction of the subject matter . . . jurisdiction of the person may be conferred by consent of the person, manifested in

5

various ways" including a "general appearance." (2 Witkin, Cal. Proc. (5th ed. 2008) Jurisdiction, § 186, p. 794; see also *In Re Marriage of Fitzgerald & King (*1995) 39 Cal.App.4th*, 1419, 1426 (*Fitzgerald*).) By generally appearing, a defendant relinquishes all objections based on lack of personal jurisdiction or defective process or service of process. (Code Civ. Proc. §§ 410.50(a), 418.10(e)(3); *In re Vanessa Q*. (2010) 187 Cal.App. 4th 128, 135.) A general appearance has these effects even if the defendant is unaware that a jurisdictional objection is available. (*Fireman's Fund Ins. Co. v. Sparks Const., Inc*. (2004) 114 Cal.App. 4th 1135, 1145.) Such an appearance is "equivalent to personal service within this state of the summons and a copy of the petition upon [the defendant]." (Cal. Rules of Court, rule 5.68(c).)

A California defendant can preserve objections to personal jurisdiction only by making a *special* appearance, i.e., an appearance for the *sole* purpose of objecting to the court's jurisdiction. (See *Greener v. Workers' Comp. Appeals Bd.* (1993) 6 Cal.4th 1028, 1036-1037.) A special appearance does not confer jurisdiction on the court for any purpose other than determining the question of jurisdiction over the person. (*Titus v Superior Court* (1972) 23 Cal.App.3d 792, 801.)

Raul asserts that he made a special appearance at the April 29 hearing because he participated only "to object to the trial court's exercise of jurisdiction over himself and his earnings" and that "he did not seek any affirmative relief from the court." But nothing in the record sustains this assertion. The minute order from the April 29 hearing does not allude to any jurisdictional objection. It delineates the issues before the court as "spousal support and arrearages and the January 8, 2013 hearing orders." The order recites that the court (1) ruled that the "previous order for spousal support is valid"; (2) "awarded [Ingrid] arrears to date . . . of $7628.44; and (3) "directed Raul to pay $100 monthly toward arrears, effective May 15, 2013." The order makes no reference to any claim of a limited or special appearance. So far as the record shows, Raul raised no

6

jurisdictional issue until he filed his motion to quash service of process three months later.

Raul's assertions to the contrary run afoul of one of the most fundamental principles of appellate procedure: "[T]o be successful on appeal, an appellant must be able to affirmatively demonstrate error on the record before the court. ' " 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' " ' " (*In re Marriage of Falcone* (2008) 164 Cal.App.4th 814, 822.) It appears that none of the hearings in the trial court were reported.[3] Nor do we see any indication that Raul sought to secure an agreed or settled record regarding those proceedings. (See Cal. Rules of Court, rules 8.130(h), 8.137.) "We must therefore presume that what occurred at that hearing supports the judgment." (*Hearn v. Howard*

---

[3] We are deeply troubled by the trial court's policy of conducting all family law matters without a reporter unless a reporter is engaged by one or both parties at their own expense. This policy is actually codified in a local rule stating, "The family court does not provide a court reporter in family law matters, except when possible a reporter will be provided for DCSS and restraining order matters. If you would like to have a court reporter present you will need to hire and pay all costs associated with the reporter." (Super. Ct. Santa Cruz County, Local Rules, rule 3.7.01.) As illustrated by this case, the absence of a verbatim record can preclude effective appellate review, cloaking the trial court's actions in an impregnable presumption of correctness regardless of what may have actually transpired. Such a regime can raise grave issues of due process as well as equal protection in light of its disparate impact on litigants with limited financial means. The practice becomes all the more troubling when viewed in combination with the statewide prohibition against privately recording court proceedings "for any purpose other than as personal notes." (Cal. Rules of Court, rule 1.150(d).) Perhaps the time has come at last for California to enter the twentieth (*sic*) century and permit parties to record proceedings electronically in lieu of the far less reliable method of human stenography and transcription. Until that day, however, we believe the right to effective appellate review cannot be permitted to depend entirely on the means of the parties. We refrain from addressing the issue further here only because the parties have neither raised a claim of error nor made a record of prejudice with respect to the court's failure to furnish a reporter.

(2009) 177 Cal.App.4th 1193, 1201; *Estrada v. Ramirez* (1999) 71 Cal.App.4th 618, 620, fn. 1 ["It is the burden of appellant to provide an accurate record on appeal to demonstrate error. Failure to do so precludes an adequate review and results in affirmance of the trial court's determination"].) We must therefore presume that Raul did not limit his objections at the April 29 hearing to matters of jurisdiction, that he opposed Ingrid's prayers for relief on the merits, and that he thus submitted to the court's jurisdiction by making a general appearance.[4]

### B. "Retroactive" Effect

Raul argues that even if he made a general appearance at the April 29 hearing, "such an appearance would not retroactively bestow jurisdiction for the prior orders issued by the trial court." First he cites Code of Civil Procedure section 410.50, which provides that while a general appearance is "equivalent to personal service of summons" (*id*., subd. (a)), it only applies "throughout subsequent proceedings in the action" (*id*., subd. (b)).

---

[4] California Rules of Court, rule 5.62(a), enumerates actions that will constitute a general appearance in a dissolution proceeding. Were we writing on a blank slate we might consider the hypothesis—not argued by Raul—that this list is exclusive, at least as applied to unrepresented litigants. However, the rule echoes Code of Civil Procedure section 1014, which likewise enumerates acts constituting a general appearance in civil actions generally. For several decades, at least, courts have held the list in that statute not to be exclusive. (See, e.g., *Hamilton v. Asbestos Corp., Ltd.* ( 2000) 22 Cal.4th 1127, 1147; *Air Machine Com SRL v. Superior Court* (2010) 186 Cal.App.4th 414, 420; *Dial 800 v. Fesbinder*, *supra*, 118 Cal.App.4th at p. 52; *Creed v. Schultz* (1983) 148 Cal.App.3d 733, 739-740; but see *Voorman v. Li Po Tai* (1896) 113 Cal. 302, 305 [defendant appears by means specified in statute, and "can appear in no other way"].) Arguably a different rule should prevail in a context such as the present one, where many litigants appear in propria persona and grave and irrevocable consequences can otherwise flow, as they did here, from merely addressing the court without appreciating the legal significance of that conduct. But the point has not been raised, and we will not reach out to decide it on our own motion.

8

The cited statute, however, is only concerned with the effect of a general appearance as a substitute for proper *service of process*. Ingrid does not rely on Raul's general appearance to cure defects in service of process, because Raul did not predicate his motion to quash on any such defects.[5] Instead he challenged the existence of substantive jurisdiction *over his person*. The rule concerning jurisdiction over the person is codified in California's long-arm statute, Code of Civil Procedure section 410.10, under which California courts "may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or the United States." One recognized basis of jurisdiction is the existence of " 'minimum contacts' " between the defendant and the forum state "such that the exercise of jurisdiction would not offend " ' "traditional notions of fair play and substantial justice." ' " (*Fitzgerald, supra,* Cal.App.4th 1419, 1425-1426, quoting *International Shoe Co. v. Washington* (1945) 326 U.S. 310, 316.) Raul contends that he lacks sufficient contacts with California to satisfy this test. But as he acknowledges, jurisdiction over the person may also be predicated on *consent*, which can be effected by a general appearance. (E.g, *In re Marriage of Jacobson* (1984) 161 Cal.App.3d 465, 470 [husband "made a general appearance and thereby consented to the jurisdiction of the court"]; cf. *Fitzgerald*, *supra*, at pp. 1425, 1427-1431.) It was for this purpose that Ingrid cited his appearance on April 29. Code of Civil Procedure section 410.50, subdivision (b), has no bearing on the question.

---

[5] The record shows service by (1) mail, as acknowledged by Raul in writing (see Code Civ. Proc., § 415.30); and (2) substitute service, i.e., posting and mailing, by a New York sheriff's deputy. In his reply brief Raul asserts, apparently for the first time, that the substitute service as described by the deputy "is not a recognized method of service of process under California law—either on residents or non-residents. (See Code Civ. Proc. § 415.40)" But he makes no attempt to escape the general rule that points first made in a reply brief will not be addressed. (See *In re Marriage of Stanton* (2010) 190 Cal.App.4th 547, 561.) In any event he offers no challenge to the earlier service by mail and acknowledgment. (See Code Civ. Proc., § 415.30.)

9

The distinction just drawn between a substantive basis for personal jurisdiction and a defect in service of process is central to *In re Marriage of Smith* (1982) 135 Cal.App.3d 543 (*Smith*), which Raul cites for the proposition that the trial court here gave impermissibly "retroactive" effect to his April 29 appearance. The husband there filed a motion to quash after the wife secured a default judgment with a fraudulent proof of service. The wife contended that the husband had forfeited his objections to *service* by making a general appearance, i.e., by asking for a continuance and engaging in discovery.[6] The court rejected this contention on several overlapping grounds, but stated its holding narrowly: "[A] defendant who was *defectively served* with summons did not make that *service* retroactively valid by entering a general appearance *after judgment was entered*." (*Id.* at p. 545; italics added.) That holding is inapposite here for at least two reasons: the claim here is not defective service, but want of a constitutional basis of jurisdiction; and Raul's general appearance was not made after judgment. but much earlier in the action, at a time when Raul could have moved to quash, but instead appeared on the merits.

The court in *Smith* addressed the viability of a body of caselaw applying a "[w]aiver [r]ule" under which " '[a] general appearance made after entry of judgment has the effect of curing any defect arising from the lack of jurisdiction *due to the failure to serve or notify a person of the proceedings . . . .*' " (*Smith, supra,* 135 Cal.App.3d at p. 547, italics added, quoting *Farmers, etc. Nat. Bk. v. Superior Court* (1945) 25 Cal.2d 842, 846-847.) This "judge-made rule," observed the court, had been stated in five

---

[6] See now Family Code section 2012, subdivision (a), which provides that while a motion to quash is pending, "the respondent may appear in opposition to an order made during the pendency of the proceeding and the appearance shall not be deemed a general appearance by the respondent." The present controversy might have been obviated had Raul availed himself of this provision, which he might have done had he only consulted counsel before walking into court—as the papers served on him urged him to do.

California cases, but was necessary to the decision in only one of them. (*Id.* at p. 547.) In that case the defendant had challenged a default judgment on the ground that the affidavit of service lacked a required recital. (*Security etc. Co. v. Boston etc. Co.* (1899) 126 Cal. 418.) But because the defendant had also challenged the sufficiency of the complaint, it was held to have made a general appearance which, the court declared, was " 'a submission to the jurisdiction of the court as completely as if he had been regularly served with process . . . .' " (*Id.* at p. 422.)

The court in *Smith* criticized *Security* as resting on two lines of cases, one sound and one not. The sound cases held that "a general appearance by an unserved or improperly served defendant is *equivalent to personal service* so that the court has personal jurisdiction throughout *subsequent* proceedings in the action." (*Smith, supra,* 135 Cal.App.3d at p. 548, first italics added.) This rule was intended "to preclude a defendant from *litigating an action to a conclusion* and later, if dissatisfied, urging lack of personal jurisdiction over him." (*Ibid*, italics added.) This rationale. the court added, "is obviously inapplicable to a case where judgment has already been entered." (*Ibid*.)

The second body of cases, with which the court took issue, relied on the concept of "waiver" to conclude "that a defendant's general appearance, either before or after judgment, *retroactively makes valid* a defective *service of process*." (*Smith, supra,* 135 Cal.App.3d at p. 548, italics added.) This rule, the court held, was unsound at its inception—at least as applied to post-judgment appearances. Further, it had been preempted by the enactment in 1969 of the Jurisdiction and Service of Process Act, Code of Civil Procedure sections 410.10-418.10. (*Id.* at p. 550.) The court took particular note of Code of Civil Procedure section 410.50, which specifies, as already noted, that jurisdiction by virtue of a general appearance only attaches for " 'subsequent proceedings in the action.' " (*Id.* at p. 551.) The long-arm statute (Code Civ. Proc., § 410.10) did not

11

support a different result, precisely because it is concerned only with the substantive basis for jurisdiction—not service of process. (*Id.* at p. 552.)

As this exigesis makes clear, the *Smith* court was solely concerned with defects in *service of process* and the limited (prospective-only) tendency of a general appearance to cure such defects. This analysis has no bearing here. Nor is Raul's argument to the contrary easily reduced to syllogistic form. He asserts that since the court below "lacked personal jurisdiction over [him] when it issued the orders on January 8, 2013," and since the subsequent orders rested on those January 8 orders, all of the court's orders were invalid and must be set aside. But we cannot accept the premise that the court "lacked personal jurisdiction" over Raul on January 8 or at any other relevant time. If he means that the court lacked a substantive basis on which to exercise jurisdiction over him, in that he lacked sufficient contacts with California, his argument fails because that issue was never tendered for determination until Raul had rendered it moot by making a general appearance and thereby submitting to the court's jurisdiction. If he were correct that he might have been able to establish an absence of jurisdiction when the prior order was made, the method by which to raise that issue would have been a motion to set aside *that order*. Having failed to bring such a motion—instead challenging the court's jurisdiction over the entire action—he has not laid the groundwork for this court to entertain his retroactivity argument.

## II. Defective Notice of Request for Order

Raul correctly asserts that he did not receive the statutorily prescribed notice of the continued order to show cause hearing on January 8, 2013. Code of Civil Procedure section 1005, subdivision (b), provides that moving papers must be served at least 16 court days before the hearing, plus an additional 10 calendar days for an out-of-state resident like Raul. Here, at the originally scheduled hearing on December 7, 2012, Ingrid

12

asked the court to continue the hearing date to January 8, 2013.[7] Sixteen court days before that date was December 13; 10 calendar days before that was December 3. Notice of the January 8 hearing was mailed to Raul on December 10—a week late.

However, Raul did not raise this objection when he first appeared on April 29. He objected only on July 23, 2013 when he moved to quash service. In the meantime, he had made a general appearance without raising any objection to the manner or time of notice of any of the preceding hearings. To preserve a claim to defective notice of a motion or other hearing, the objection must be raised at the earliest opportunity and accompanied by some indication of prejudice. (See *Carlton v. Ouint* (2000) 77 Cal.App.4th. 690, 697-698; *Reedy v. Bussell* (2007) 148 Cal.App.4th 1272, 1289.) Here, Raul could have moved at the April 29 hearing to set aside the January 8 order on the ground that he had received inadequate notice of it and had been unable to prepare an adequate response. Instead, so far as the record shows, he appeared at the April 29 hearing only to object to that order on the merits. By doing so, he lost the opportunity to challenge it for defective notice.

### III. In Rem Jurisdiction

In addition to personal and subject matter jurisdiction, a court presiding over a marital dissolution action must possess " 'in rem' jurisdiction over the marital 'res' to terminate marital status." (*Muckle v. Superior Court* (2002) 102 Cal.App.4th 218, 225.) This requirement is expressed in Family Code section 2320, subdivision (a), which

---

[7] Ingrid repeatedly asserts that the hearing was continued "[a]t Raul's request." The relevance of these assertions is obscure. A request for a continuance to file a responsive pleading is not itself a general appearance. (Code Civ. Proc., § 418.10, subd. (d).) Conceivably, consent by Raul to continue the hearing to a *specific date* inside the statutory time for notice might support an argument that he had waived the statutory requirement. But Ingrid's averments on this subject are too vague to establish any such agreement. They are equally consistent with the view that Raul asked for a continuance without any understanding or agreement as to when the continued matter might be heard.

13

provides as relevant here that "a judgment of dissolution of marriage may not be entered unless one of the parties to the marriage has been a resident of this state for six months and of the county in which the proceeding is filed for three months next preceding the filing of the petition."

In his opening brief Raul contended, as he did in support of his motion to quash, that Ingrid had failed to establish residency as contemplated by the statute. For these purposes, residency means *domicile* (*In re Marriage of Thornton* (1982) 135 Cal.App.3d 500, 507), which requires both physical presence and an intent to remain "indefinitely" (*In re Marriage of Tucker* (1991) 226 Cal.App.3d 1249, 1258-1259; see *In re Marriage of Dick* (1993) 15 Cal.App.4th 144, 152-153). "Whether the residency requirement has been met is a question of fact and the burden of establishing residence is on the party asserting it." (*In re Marriage of Dick*, *supra*, at p. 153.)

Raul's declaration in support of the motion to quash included averments that while attending court for the April 29 hearing, he had "discovered that Petitioner is not, as she represented to me and to the Court . . . , living in the State of California." Instead, he asserted, "She has lived and continues to live in Chile since the year 2000 or 2001. . . . [¶] . . . [¶] She came to the State of California solely to file the dissolution and then went back to Chile where she continues to reside. I know this because we have two children together; they both live in Chile and have told me that Ingrid continues to live there. Additionally, when she appeared in Court April 29, 2013, she appeared by phone."

Although these averments were patently objectionable on grounds of hearsay and lack of foundation, we see no evidence that Ingrid objected to them. We must also acknowledge that her own written showing on this issue is far from persuasive. She did not directly aver that she had lived in California for six months, or in Santa Cruz County for three months, preceding her December 7, 2012, petition. Nor did she allude to her future intentions. She asserted that the Social Security Administration had "determined

14

that [she was] a resident of Santa Cruz County and ha[d] been paying [her] benefits," but the only other evidence of this was a notice of an increase in benefits mailed to her at a Watsonville address slightly over a year before she filed her petition. Other averments were similarly equivocal, inferential, or both. She presented a number of transaction slips to show purchases in and around Watsonville, but the earliest of these is dated October 14, 2012—24 days before the petition was filed—and the earliest one in Santa Cruz County is dated 12 days after that.

If this were the only evidence before the court below we might indeed question its sufficiency to sustain a finding of residency. But the minutes of the September 27 hearing at which Raul's motion to quash was heard recite that Ingrid was "sworn and examined" and "questioned regarding residency." No attempt has been made to competently establish what her testimony was. After the hearing, the court found that she had satisfied her burden of establishing the requisite residency. We are bound by that finding under the principles we have already discussed concerning the absence of a record of the oral proceedings on April 29.

We also note that after Ingrid presented the minutes of the September 27 hearing as an appendix to her brief, Raul did not further defend his challenge to the court's finding of residency. His reply brief contains no reference at all to that finding, in effect abandoning the point. (See *In re Z.S.* (2015) 235 Cal.App.4th 754, 768; *Overstock.Com, Inc. v. Goldman Sachs & Co.* (2014) 231 Cal.App.4th 513, 530, fn. 11; *Schwartz v. Fay* (1941) 48 Cal.App.2d 446, 448.)

Reversal cannot be predicated on the claimed lack of residency.

## IV. *Entry of Default*

The trial court entered Raul's default judgment while his writ petition was pending before this court. Raul contends that this violated Code of Civil Procedure section 418.10 (§ 418.10)—specifically subdivision (c) thereof (§ 418(c)), which held open his time to

15

plead while his writ petition was pending, and subdivision (d) (§ 418.10(d)), which prohibited entry of a default during that time.[8] This contention is sound.

Raul filed his motion to quash on July 22, 2013, with a hearing date of September 27. The court signed an order denying the motion, apparently, on October 28, 2013; that order was filed on November 6, and notice thereof given to Raul on November 7.[9] On November 18, 2013, Raul filed and served a notice that he was "filing a petition in the Court of Appeal . . . for a writ of mandate to compel the above-named court to vacate its order denying [the motion] . . . to quash service of summons . . . ." The notice stated that the petition "will be filed on November 18, 2013." On December 16, the court conducted a status conference at which, according to its

---

[8] Code of Civil Procedure section 418 provides in relevant part: "(c) If the motion [to quash] is denied by the trial court, the defendant, within 10 days after service upon him or her of a written notice of entry of an order of the court denying his or her motion, or within any further time not exceeding 20 days that the trial court may for good cause allow, and before pleading, may petition an appropriate reviewing court for a writ of mandate to require the trial court to enter its order quashing the service of summons or staying or dismissing the action. The defendant shall file or enter his or her responsive pleading in the trial court within the time prescribed by subdivision (b) unless, on or before the last day of the defendant's time to plead, he or she serves upon the adverse party and files with the trial court a notice that he or she has petitioned for a writ of mandate. The service and filing of the notice shall extend the defendant's time to plead until 10 days after service upon him or her of a written notice of the final judgment in the mandate proceeding. The time to plead may for good cause shown be extended by the trial court for an additional period not exceeding 20 days.

"(d) No default may be entered against the defendant before expiration of his or her time to plead, and no motion under this section, or under Section 473 or 473.5 when joined with a motion under this section, or application to the court or stipulation of the parties for an extension of the time to plead, shall be deemed a general appearance by the defendant." (Code Civ. Proc., § 418.10, subds. (c), (d).)

[9] Ingrid has presented a minute order, presumably generated at or immediately after the September 23 hearing, reflecting denial of the motion to quash. But there is no indication that written notice of that document was ever given to Raul.

16

minute order, it directed the parties to "file and serve their Income & expense declarations and preliminary disclosures," and directed Ingrid to "file and serve her request to enter default." Again the proceedings were unreported, but the record contains a letter from Raul's counsel, apparently hand delivered to the judge on the date of the hearing, bringing to his attention the above provisions holding open his time to plead. Eleven days later, Ingrid requested, and the clerk entered, Raul's default. On January 23, 2014, the court entered the default judgment now under review.

On June 23, 2014, this court denied Raul's petition for writ of mandate and associated relief.

Raul asserts that the trial court violated section 418.10(d) by taking his default while his petition for mandate was pending in this court. Ingrid's somewhat oblique response is that the motion to quash was itself untimely, and therefore could not hold open Raul's time to respond. It is true that the motion was not filed within the time granted to Raul *as a matter of right* within which to bring such a motion. Section 418.10, subdivision (a) (§ 418.10(a)), entitles a defendant to move to quash "on or before the last day of [the movant's] time to plead or within any further time that the court may for good cause allow." California Rules of Court, rule 5.63 entitles a respondent to bring such a motion "[w]ithin the time permitted to file a response." Family Code section 2020 provides that in a dissolution action, "[a] responsive pleading, if any, shall be filed and a copy served on the petitioner within 30 days of the date of the service on the respondent of a copy of the petition and summons."

Raul did not move to quash within the time thus allowed. Service on him was complete on December 4, 2012, when he signed an acknowledgment of receipt of mailed process. (Code Civ. Proc., § 415.30, subd. (c).) That gave him 30 days—to January 3, 2013—in which to file a responsive pleading or a motion to quash. This was apparently extended by informal agreement to January 8, when the trial court made its

17

first orders in this matter. According to Ingrid, Raul's failure to move to quash within this time deprived him of the benefit of sections 418.10(c) and (d). But this contention overlooks additional language in section 418.10(a) entitling a defendant to move to quash "within any further time that the court may for good cause allow." Here the court "allow[ed]" Raul to bring his motion on July 22, 2013. Ingrid at no time objected to the motion, or sought to strike it, as untimely. The closest she came was to argue that Raul had "waived [his] motion to quash" insofar as it was "based on the failure to meet the residence requirement of Family Code Section 2320." With respect to the claimed lack of personal jurisdiction, her only opposition was on the merits, i.e., that Raul had submitted to jurisdiction by making a general appearance. Moreover the court clearly decided *both* aspects of the motion on the merits. On the issue of residence it received testimony and ultimately found that Ingrid had "met the residency requirements to file for dissolution." With respect to personal jurisdiction, it found that Raul's appearance and argument on the merits on April 29 had given the court "jurisdiction over him."

Had an objection been made to the timeliness of the motion, Raul might have been able to meet it by demonstrating "good cause" to excuse him from the time limits under section 418.10(a). In the absence of such an objection—or notice from the court that it intended to rely on such a ground—he had no opportunity to meet it. Moreover, a rejection of his position in such a posture might itself be immediately reviewed for abuse of discretion. Instead Raul was justifiably led to believe that his motion to quash had been entertained on the merits—as indeed it was—and that he was entitled to seek appellate review pursuant to the same code provisions. By insisting that he file a responsive pleading before such review was complete, the court was in effect demanding that he now make the general appearance he insisted he had *not* yet made, thereby forfeiting his jurisdictional objections while review of them was pending. (See *State Farm General Ins. Co. v. JT's Frames, Inc.* (2010) 181 Cal.App.4th 429, 441 (*State*

18

*Farm*) [defendant submitted to jurisdiction by defending on merits while writ petition pending].)  Section 418.10 protects the defendant's right to seek immediate appellate review in recognition of the California rule, contrary to that in federal and many state courts, that an objection to personal jurisdiction must be finally determined—including appellate review—before the defendant can litigate any defense on the merits.  (See *State Farm, supra,* at p. 442 [acknowledging that under federal procedure, "personal jurisdiction may be litigated long after litigation of the merits has commenced, and the defendant may appeal jurisdictional issues after the case is resolved"].)  Thus, by directing that Raul defend himself on the merits, the court was in effect ordering him to choose between his jurisdictional objections and his right to mount a merits defense if and when the jurisdictional objection was finally resolved.  If the trial court meant to impose such a forfeiture based on the untimeliness of Raul's motion to quash, it was incumbent upon the court to so notify him, and provide him an opportunity to persuade the court otherwise.  We conclude that, under these circumstances, the motion to quash was timely because brought within time allowed by the trial court.  It follows that his petition for a writ of mandate did hold open his time to file a response to Ingrid's petition, and that the trial court erred by taking his default within that time.

19

## DISPOSITION

The judgment is reversed with directions to set aside the entry of default and allow Raul an additional 30 days to file a response to Ingrid's petition.  In all other respects the judgment is affirmed.  Each party will bear his or her own costs.

_____
RUSHING, P.J.

WE CONCUR:

_____
PREMO, J.

_____
MÁRQUEZ, J.

20

Trial Court:                                    Santa Cruz County Superior Court
                                                Superior Court No.:  FL035136


Trial Judge:                                    The Honorable
                                                Ariadne J. Symons



Attorneys for Appellant Raul Obrecht:           Grunsky, Ebey, Farrar & Howell

                                                Liliana S. Diaz
                                                Rosemary Rovick




Attorneys for Respondent Ingrid Obrecht:        Law Offices of Jill Freybourg

                                                Jill Andrea Freybourg




**H040827**


21