Filed 1/12/26  Parker v. Freiberger CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SHILOH PARKER,<br><br>      Plaintiff and Appellant,<br><br>      v.<br><br>HALEY FREIBERGER et al.,<br><br>      Defendants and Respondents. | B342580<br><br>(Los Angeles County<br>Super. Ct. No. 24STCV07715) |

APPEAL from orders of the Superior Court of Los Angeles County, Teresa A. Beaudet, Judge.  Affirmed.

Shiloh A. Parker, in pro. per., for Plaintiff and Appellant.

Reeder McCreary, Christopher S. Reeder, Duncan McCreary, and Marcus L. Tippens, for Defendants and Respondents.

_____

Plaintiff Shiloh Parker appeals from an order granting defendants Haley and Kyle Freiberger's motion to quash service of summons in Parker's lawsuit against them.[1]  The Freibergers, who are Georgia residents, listed a Georgia property for rent on Zillow.com (Zillow).  Parker applied to rent the property and the parties negotiated a lease.  After a dispute over the deposit and first month's rent, Parker sued the Freibergers in California.  The Freibergers specially appeared and moved to quash service of summons for lack of personal jurisdiction.  The trial court granted the motion.

We conclude that the Freibergers did not purposefully avail themselves of the protections of California law, and further conclude that Parker has not identified any other basis for reversal.  We therefore affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

In March 2024, Parker filed a lawsuit against the Freibergers in Los Angeles County Superior Court.[2]  Parker alleged that she was a Los Angeles resident at all times relevant to the parties' dispute.  Sometime in early 2024, Parker searched on Zillow for rental properties in Georgia "to eliminate the monthly travel of her military husband to Georgia for reserve duty."  She applied to rent a property in Athens, Georgia owned by the Freibergers.  In early February, the parties negotiated a one-year lease and Parker sent a deposit.  Parker alleged that the

---

[1]    Because the Freibergers share a last name, we refer to them by first name herein.  No disrespect is intended.

[2]    The complaint is not included in the record on appeal.  We take this aspect of our statement of facts from the trial court's description of the relevant allegations.

2

Freibergers had agreed to mail her the keys as soon as she paid the deposit, but they did not incorporate that agreement into the lease, and the Freibergers refused to send the keys until Parker sent the first month's rent. Parker sued the Freibergers for fraud, breach of the covenant of good faith and fair dealing, unfair business practices, and disgorgement.

In June 2024, the Freibergers specially appeared in the action and moved to quash service of summons. The motion argued that the court lacked personal jurisdiction over the Freibergers and that Parker failed to properly serve them with the summons and complaint.

Haley and Kyle provided signed declarations in support of the motion. They declared that they reside in Georgia and own a residential rental property in that state. In February 2024, Parker contacted the Freibergers about leasing the property. The Freibergers provided Parker with a video tour and exchanged text messages with her regarding a lease agreement. Parker and her spouse signed the lease "via Zillow" on February 8, 2024, and the Freibergers signed it electronically the next day

According to the Freibergers' declarations, the lease agreement required Parker to submit a security deposit and the first month's rent at the time of signing. Parker's bank account prohibited her from sending the full amount in one transaction. She sent the Freibergers the deposit through Zelle shortly after signing the lease. On February 11, 2024, Haley asked Parker about the first month's rent. Parker "got upset" and asked the Freibergers to return the security deposit if they were unwilling to wait until March 1, 2024, to receive the first month's rent.

On February 11, 2024, Parker e-mailed the Freibergers a letter demanding that they preserve evidence relating to Parker

3

and nonparty Joseph Parker.  The next day, Parker e-mailed the Freibergers a draft complaint to be filed against them in the United States District Court for the Middle District of Georgia.

Haley's declaration in support of the motion to quash attached a sworn declaration filed by Parker in the United States District Court for the Central District of California in which Parker declared that she was living in Georgia on February 10, 2024.[3]

Parker opposed the motion to quash in September 2024. The opposition argued that the court had personal jurisdiction over the Freibergers because they purposefully availed themselves of the benefits and protections of California law by posting their rental property on Zillow.  In support of the opposition, Parker declared that she was a licensed attorney and the sole proprietor of a law office in the State of California, and that the Freibergers were aware that she conducted business in California.  She further declared that she was in California when the Freibergers contacted her to conduct a video tour of the property.

The opposition also asserted that the motion should be denied because it was not properly served.  In support of this argument, Parker declared that she did not agree to electronic service of the motion to quash.

The trial court issued a tentative ruling on October 21, 2024.  The court concluded that the Freibergers were not subject to personal jurisdiction in California.  It found that the Freibergers reside in Georgia and had no contacts with California aside from their communications with Parker regarding the

---

[3]     The declaration was filed in *J.P. v. Eastern Revenue, Inc., et al.*, case No. 2:23-cv-10512-HDV-E.

4

lease. The court determined that the Freibergers' use of Zillow to offer their rental property for lease did not demonstrate that they purposefully availed themselves of the benefits of California. The court therefore tentatively granted the Freibergers' motion to quash service of summons for lack of personal jurisdiction.

The court rejected Parker's argument that she was not served with the motion to quash. It cited a proof of service attached to the motion to quash, which reflected that Parker was served by mail. Although Parker's declaration asserted that she did not agree to electronic service, the court determined this was irrelevant since Parker provided no evidence to contradict the proof of service.

On October 22, 2024, the court adopted its tentative ruling as final and entered an order granting the Freibergers' motion to quash.

Parker moved for reconsideration of the order quashing service of summons on October 30, 2024. The trial court denied her motion on December 3, 2024.

Parker timely appealed from the order granting the motion to quash and order denying her motion for reconsideration.

## DISCUSSION

### I. The Freibergers are not subject to personal jurisdiction in California

Parker argues that the trial court erred in granting the Freibergers' motion to quash service of summons because the

Freibergers are subject to specific jurisdiction in this state.  For the reasons discussed herein, we disagree.

## A.     *Legal framework and standard of review*

California courts "may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."  (Code Civ. Proc., § 410.10.)[4]  "A state court's assertion of personal jurisdiction over a nonresident defendant who has not been served with process within the state comports with the requirements of the due process clause of the federal Constitution if the defendant has such minimum contacts with the state that the assertion of jurisdiction does not violate ' "traditional notions of fair play and substantial justice." ' "  (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444 (*Vons*), quoting *International Shoe Co. v. Washington* (1945) 326 U.S. 310, 316.)

"Under the minimum contacts test, '[p]ersonal jurisdiction may be either general or specific.' "  (*Snowney v. Harrah's Entertainment, Inc.* (2005) 35 Cal.4th 1054, 1062 (*Snowney*).)  Parker does not argue that the Freibergers are subject to general jurisdiction, and therefore "we only consider whether specific jurisdiction exists here."  (*Ibid.*)

"A court may exercise specific jurisdiction over a nonresident defendant only if: (1) 'the defendant has purposefully availed himself or herself of forum benefits' [citation]; (2) 'the "controversy is related to or 'arises out of' [the] defendant's contacts with the forum" ' [citations]; and (3) ' "the assertion of personal jurisdiction would comport with 'fair play and

---

[4]     Further undesignated statutory references are to the Code of Civil Procedure.

6

substantial justice.' " ' " (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 269 (*Pavlovich*), abrogated on another ground as stated in *David L. v. Superior Court* (2018) 29 Cal.App.5th 359, 369–370, 372.)

"An out-of-state defendant purposefully avails itself of a forum state's benefits if the defendant (1) purposefully directs its activities at the forum state's residents, (2) purposefully derives a benefit from its activities in the forum state, or (3) purposefully invokes the privileges and protections of the forum state's laws by (a) purposefully engaging in 'significant activities' within the forum state or (b) purposefully creating 'continuing [contractual] obligations' between itself and the residents of the forum state." (*Jacqueline B. v. Rawls Law Group, P.C.* (2021) 68 Cal.App.5th 243, 253 (*Jacqueline B.*).)

" 'When a defendant moves to quash service of process' for lack of specific jurisdiction, 'the plaintiff has the initial burden of demonstrating facts justifying the exercise of jurisdiction.' [Citation.] 'If the plaintiff meets this initial burden, then the defendant has the burden of demonstrating "that the exercise of jurisdiction would be unreasonable." ' [Citation]." (*Snowney*, *supra*, 35 Cal.4th at p. 1062.)

"When there is conflicting evidence, the trial court's factual determinations are not disturbed on appeal if supported by substantial evidence. [Citation.] When no conflict in the evidence exists, however, the question of jurisdiction is purely one of law and the reviewing court engages in an independent review of the record." (*Vons, supra*, 14 Cal.4th at p. 449.) Parker's opening brief purports to challenge several factual findings as inconsistent with the record, but in truth her arguments relating to purposeful availment address the legal

significance of certain evidence. In short, "there is no material conflict in the evidence itself, so our review is de novo." (*Anglo Irish Bank Corp., PLC v. Superior Court* (2008) 165 Cal.App.4th 969, 980 (*Anglo Irish Bank*).)

### B. The Freibergers did not purposefully avail themselves of California benefits

The Freibergers are residents of Georgia, and they own a rental property in that state. They offered the property for rent on Zillow. Parker, a California resident, contacted the Freibergers about the rental, and the parties negotiated and signed a lease.[5] There is no evidence that the Freibergers " 'purposefully and voluntarily' " directed the Zillow listing toward California residents.[6] (*Pavlovich*, *supra*, 29 Cal.4th at p. 269.) The property at issue is in Georgia, and the Freibergers did not come to California while negotiating the lease, meaning they

---

[5] The complaint alleged that Parker was a California resident. Parker also declared under oath, in an unrelated federal case, that she was living in Georgia on February 10, 2024, the day after the lease was signed. The trial court did not appear to make any finding as to Parker's residency. We assume without deciding that Parker was a California resident for purposes of our analysis.

[6] Parker argues on appeal that the Freibergers "target[ed] out-of-state students," citing a declaration filed by nonparty Matthew Pearson in support of her opposition to the motion to quash. According to Pearson's declaration, Kyle told Parker that Haley owned and rented out homes that "attracted students from all over the country." But the fact that the property was attractive to out-of-state students does not support that the Freibergers targeted those students.

did not benefit from conducting activities in this state. (*Jacqueline B.*, *supra*, 68 Cal.App.5th at p. 253.) Nor does the Freibergers' single fixed-term contract with a Californian support that they invoked the privileges of California law by engaging in " 'significant activities' " in this state or forming " 'continuing [contractual] obligations' " with Californians. (*Ibid*.; *Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 478 ["an individual's contract with an out-of-state party *alone*" does not "automatically establish sufficient minimum contacts in the other party's home forum"].)

Parker asserts that the Freibergers intended to avail themselves of the benefits of this state because they posted the rental property on Zillow, and the parties communicated using that website. "To determine whether a Web site is sufficient to establish purposeful availment, we first look to the sliding scale analysis described in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.* (W.D.Pa. 1997) 952 F.Supp. 1119 (*Zippo*)." (*Snowney*, *supra*, 35 Cal.4th at p. 1063.) " 'At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. [Citation.] At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. [Citation.] The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction

9

is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.' " (*Ibid*.)

We agree with Parker that Zillow is a middle ground website, because it allowed the Freibergers to "exchange information" with Parker and other potential tenants. (*Snowney*, *supra*, 35 Cal.4th at p. 1063.) As our Supreme Court recognized, some courts have concluded that the use of a middle ground website is sufficient to establish personal jurisdiction if it " ' is capable of accepting and does accept purchase orders from residents of the forum state.' " (*Id*. at p. 1064, quoting *Shamsuddin v. Vitamin Research Products* (D.Md. 2004) 346 F.Supp.2d 804, 810.) "Other courts have suggested that ' "something more" ' is necessary, such as ' "deliberate action" within the forum state in the form of transactions between the defendant and residents of the forum or conduct of the defendant purposefully directed at residents of the forum state.' " (*Snowney*, at p. 1064, quoting *Millennium Enterprises, Inc. v. Millennium Music, LP* (D.Or. 1999) 33 F.Supp.2d 907, 921.)

In *Snowney*, our high court declined to adopt any particular test for middle ground websites, because under any standard, the defendants' conduct in that case established personal jurisdiction. (*Snowney*, *supra*, 35 Cal.4th at p. 1064.) Specifically, the defendant hotel operators purposefully availed themselves of California protections by using a website to "tout[] the proximity of their hotels to California and provid[e] driving directions from California to their hotels . . . ." (*Id*. at p. 1064.) But as we have discussed, there is no evidence that the Freibergers took any specific steps to target California residents. *Snowney* is therefore

10

distinguishable, and does not support Parker's argument that the Freibergers are subject to personal jurisdiction in this state.

*Jacqueline B.*, *supra*, 68 Cal.App.5th 243, another case addressing a middle ground website, is a closer parallel. There, the plaintiff, a California resident, found the website of a Virginia law firm in an online search. (*Id.*, at p. 248.) The plaintiff contacted the firm by interacting with a " 'live chat' function on the website." (*Id.* at p. 249.) The plaintiff provided further information to an associate by phone, and then the firm mailed the plaintiff a proposed retainer agreement at her California address, which the plaintiff signed. (*Ibid.*) The plaintiff later sued the firm and two of its lawyers in California. (*Id.* at p. 250.) The trial court granted the defendants' motion to quash. In affirming the order, the appellate court reasoned that the defendant did not purposefully avail itself of California's protections because the website did not target Californians and the defendants did not seek to "derive any benefit" from California. (*Id.* at p. 255.) And although the parties communicated via an interactive website, the plaintiff initiated that contact. (*Ibid.*)

Similarly, here, the parties' relationship started on an interactive website. Parker initiated contact. The parties then communicated by other means and signed a lease. As we have discussed, there is no evidence that the Freibergers targeted Californians at any stage, nor that they otherwise sought to derive any benefit from this state. Under these facts, the Freibergers did not purposefully avail themselves of California's protections. Indeed, to the extent any party used Zillow to avail him or herself of the benefits of another state, it was Parker, who

11

"first contacted defendants" in search of a Georgia rental. (*Jacqueline B.*, *supra*, 68 Cal.App.5th at p. 254.)

Moreover, even when an out-of-state defendant uses a website to transact with Californians, purposeful availment is established only when "the sales [are] substantial; they are not enough if they are only 'random, isolated, or fortuitous . . . .' " (*Thurston v. Fairfield Collectibles of Georgia, LLC* (2020) 53 Cal.App.5th 1231, 1240.) The fact that the Freibergers entered a single isolated contract with Parker further supports our conclusion.

Parker argues that we should follow several federal and out-of-state court opinions in concluding that personal jurisdiction may be "predicated on sales through eBay or similar internet platforms." Of course, these opinions are not binding on this court. (*Episcopal Church Cases* (2009) 45 Cal.4th 467, 490 ["out-of-state decisions are not binding on this court"]; *Fair v. BNSF Railway Co.* (2015) 238 Cal.App.4th 269, 287 [lower federal court decisions are not binding on California courts].) The cases could be persuasive, to the extent that they involve similar facts and substantially similar long-arm statutes, and were resolved at a comparable procedural stage. But aside from cursory parenthetical summaries and quotations, Parker fails to explain why these cases are in any way analogous to this one. We therefore have no basis to find Parker's out-of-state and federal authorities persuasive. (*Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1075 (*Delta Stewardship*) [appellant's burden is to support arguments "with reasoned argument"]; *Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn. 1 (*Dills*) [appellate court will not develop appellant's arguments].)

Parker also argues that the Freibergers intended to avail themselves of California's benefits because they reached out to Parker, a California resident, through Zillow and via text message during their negotiations.  And when the Freibergers gave Parker a video tour of the property, Parker was in California.  However, "our 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."  (*Walden v. Fiore* (2014) 571 U.S. 277, 285.)  Parker fails to identify any California benefit, privilege, or protection that the Freibergers sought or obtained through these communications.  (*Jacqueline B., supra,* 68 Cal.App.5th at p. 253.)

Relatedly, Parker asserts that we must consider the Freibergers' contacts with California individually.  (*Anglo Irish Bank, supra,* 165 Cal.App.4th at p. 978 [" 'Each defendant's contacts with the forum State must be assessed individually.' "].)  It is unclear precisely what contacts Parker asks us to consider, however, because she fails to cite to the record in support of this argument.  To the extent Parker means to argue that we should consider any contacts that we have not already addressed, we reject her contentions as forfeited.  (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277 (*Hernandez*) [appellant's burden is to "provide adequate record citations" supporting arguments on appeal].)

Finally, Parker's reliance on *Hall v. LaRonde* (1997) 56 Cal.App.4th 1342 is misplaced.  The plaintiff in *Hall*, a California resident, created a software module.  The defendant, a New Yorker, incorporated the module into a software product for sale.  The parties entered a contract under which the defendant was obligated to make "continuing royalty payments" to the plaintiff.

13

(*Id*. at p. 1347.) The reviewing court reasoned that the defendant was subject to personal jurisdiction in this state because he "created a ' "continuing obligation[]" ' between himself and a resident of California." (*Ibid*.) Parker argues that her relationship with the Freibergers was similarly ongoing because the parties signed a twelve-month lease. But the lease was for a fixed term; unlike in *Hall*, it did not create an open-ended, continuing business relationship.[7]

Parker has not met her burden of establishing that the Freibergers purposefully availed themselves of California protections. (*Snowney*, *supra*, 35 Cal.4th at p. 1062.) Therefore, we need not consider the parties' arguments as to whether the lawsuit arises from the Freibergers' contacts with this state or whether exercising jurisdiction over them would be fair and just.

## II. Parker has not established any reversible error based on any alleged service defect

Parker also argues that there is insubstantial evidence that she was properly served with the Freibergers' motion to quash, and therefore she asserts that the trial court's ruling is void. We reject both aspects of this argument.

In support of its finding that Parker was served with the motion, the trial court relied on the certificate of service filed with the motion, which averred that Parker was served by mail. Parker asserts that she "testified that she never received a hard

---

[7] We reject Parker's assertion that the relationship was ongoing because the parties contemplated extending the lease into a second year. The only evidence Parker cites in support of this claim is a text message exchange that identifies the rent owed for "this year." The message does not reference the possibility of an extension.

14

copy" of the motion by mail. But Parker failed to provide a reporter's transcript, and therefore we must presume that the testimony supports the trial court ruling. (*In re Marriage of Obrecht* (2016) 245 Cal.App.4th 1, 9 (*Obrecht*) [without a reporter's transcript, reviewing court presumes that what occurred at the hearing supports the trial court order].) Parker's declaration in support of her opposition only declared that she "did not have an electronic service agreement" with the Freibergers.[8] That declaration did not assert that Parker was not served, and she provided no other evidence to contradict the proof of service. Substantial evidence supports the trial court's finding that Parker was served by mail. (*Vons*, *supra*, 14 Cal.4th at p. 449 ["factual determinations are not disturbed on appeal if supported by substantial evidence"].)

On appeal, Parker also points to an October 30, 2024 declaration that she filed in support of her motion to reconsider the order quashing service, in which she declared that she "never received a hard copy" of the motion to quash. However, Parker only challenges the factual findings in the court's October 22, 2024 order granting the motion to quash. In making those findings, the trial court necessarily did not consider Parker's October 30, 2024 declaration. We may exercise our discretion to consider evidence that was not before the trial court only when "the evidence arose after judgment or was unavailable to the movant before judgment." (*Lewis v. YouTube, LLC* (2015) 244

---

[8] We also reject Parker's argument that service was improper because she did not agree to electronic service. As we have explained, substantial evidence supports a finding that Parker was served by mail; whether Parker consented to electronic service is irrelevant.

15

Cal.App.4th 118, 123.) But Parker's October 30, 2024 declaration does not present information that was unknown to her at the time she opposed the motion to quash, and therefore we decline to consider it.

Moreover, even if Parker was not properly served with the motion to quash, she has not identified any basis for reversal.

Parker argues that the order is void because the trial court lacked jurisdiction as a result of the alleged service defect. She also claims the order is void because the Freibergers' failure to serve her amounts to fraud. Parker did not raise these arguments in her opposition to the motion to quash or in her motion for reconsideration of the order quashing service.[9] Parker forfeited these contentions by failing to bring them to the attention of the trial court when it made the rulings challenged on appeal. (*Lopez v. Ledesma* (2022) 12 Cal.5th 848, 866 (*Lopez*).)

However, Parker's first argument appears to challenge the trial court's subject matter jurisdiction, and such challenges may be raised for the first time on appeal. (*Kabran v. Sharp Memorial Hospital* (2017) 2 Cal.5th 330, 339.) Parker asserts that the alleged service defect means that the trial court lacked "fundamental jurisdiction" to resolve the motion to quash. She observes that there are "two different ways in which a court may lack jurisdiction. [Citation.] A court lacks jurisdiction in a fundamental sense when it has no authority at all over the

---

[9] Parker raised these arguments in her motion to set aside the judgment, but she did not appeal from any order denying that motion. (*Shapiro v. Clark* (2008) 164 Cal.App.4th 1128, 1137 [order on motion to set aside judgment separately appealable]; *DeZerega v. Meggs* (2000) 83 Cal.App.4th 28, 43 [when several orders are appealable, each must be separately identified in notice of appeal].)

16

subject matter or the parties, or when it lacks any power to hear or determine the case." (*People v. Ford* (2015) 61 Cal.4th 282, 286.) But a motion to quash is the proper vehicle for a defendant to challenge personal jurisdiction, and the court had power to resolve such a motion. (*Stancil v. Superior Court* (2021) 11 Cal.5th 381, 402; § 418.10.) Parker fails to provide any reasoned argument or legal authority to support her claim that the alleged service defect meant that the court lacked "authority" over, or "power" to resolve, the motion. (*Ford*, at p. 286.; *Dills*, *supra*, 28 Cal.App.4th at p. 890, fn. 1 [appellate court will not develop appellant's arguments].)

To the extent that Parker means to argue that the court lacked personal jurisdiction over her, Parker forfeited any such contention by generally appearing in the trial court. (*Obrecht*, *supra*, 245 Cal.App.4th at p. 7.)

Next, Parker asserts that the order is void because the Freibergers' failure to serve her constitutes "extrinsic and intrinsic fraud." As we have discussed, Parker failed to raise this argument below. Even if the argument were not forfeited on that basis (*Lopez*, *supra*, 12 Cal.5th at p. 866), Parker also fails to support it with legal authority, reasoned argument, and citations to the record. Specifically, Parker has not identified any legal authority defining the term "intrinsic fraud" or applying it to the facts of this case. (*Delta Stewardship*, *supra*, 48 Cal.App.5th at p. 1075 [appellant's burden is to support arguments "with reasoned argument and citations to authority"].) As for Parker's extrinsic fraud theory, Parker avers that she was "prevented from fully participating in the proceeding . . . ." (*Hudson v. Foster* (2021) 68 Cal.App.5th 640, 664.) Parker argues that she was not served with the "correct" version of the motion to quash, and therefore

17

she did not realize that she might need to conduct jurisdictional discovery until she read the trial court's tentative ruling. But Parker provides no citations to the record to support her argument that she was served with the wrong version of the motion, nor any explanation as to what aspect of the incorrect version misled her. (*Hernandez*, *supra*, 37 Cal.App.5th at p. 277 [appellant's burden is to support arguments with reasoned argument and citations to the appellate record].)

## III. Parker's remaining contentions fail

Parker raises several other arguments, none of which warrant reversal.

Parker asserts that the trial court's finding that the Freibergers " 'do not even operate their own business' " is unsupported by substantial evidence. She also contends the trial court erred by finding that the only evidence of any connection to California is that Parker " 'was in California while attempting to negotiate with the [Freibergers], who were in Georgia, regarding the Property, again, located in Georgia.' " Both aspects of the challenged order merely quoted the Freibergers' motion to quash. The court did not adopt the quotations as findings or rely on them in support of its ruling.

Parker also argues that the trial court abused its discretion by denying her request for jurisdictional discovery. (*HealthMarkets, Inc. v. Superior Court* (2009) 171 Cal.App.4th 1160, 1173 [trial court has discretion to allow plaintiff opposing motion to quash to conduct jurisdictional discovery].) According to Parker's appellate briefing, she requested jurisdictional discovery during the hearing on the Freibergers' motion to quash, and the trial court denied the request. However, Parker failed to procure a reporter's transcript of the hearing. We therefore

18

presume that the trial court resolved Parker's request without abusing its discretion. (*Southern California Gas Co. v. Flannery* (2016) 5 Cal.App.5th 476, 483 [appellant's burden to provide adequate record; reporter's transcript indispensable in many cases involving abuse of discretion standard of review]; *Obrecht*, *supra*, 245 Cal.App.4th at p. 9 [without a reporter's transcript, reviewing court presumes that what occurred at the hearing supports the trial court order].)

Next, Parker contends that the trial court erred by "vacating" her motion to reconsider the order quashing service of summons as "moot."[10] Parker appears to conflate the trial court's ruling on the merits with its decision to take the matter off calendar. On December 3, 2024, the trial court denied Parker's October 31, 2024 motion for reconsideration of the order granting the Freibergers' motion to quash. The court's order considered and rejected Parker's arguments on their merits. The court did not vacate the motion as moot. Rather, having denied the motion on the papers, the court ordered that the scheduled hearing on the motion "is now off calendar as moot." Parker's appeal does not otherwise challenge the order denying her motion to reconsider the order quashing service. We therefore affirm that order.

---

**10** Parker's notice of appeal does not separately list the order denying her motion for reconsideration. "However, if the order that was the subject of a motion for reconsideration is appealable, the denial of the motion for reconsideration is reviewable as part of an appeal from that order." (§ 1008, subd. (g).) Because the order granting the motion to quash is appealable, the order denying Parker's motion for reconsideration thereof is reviewable in this appeal. (§ 904.1, subd. (a)(3).)

19

In her prayer, Parker asks this court to assign a new judge to the case and award her unspecified appellate fees.  We reject these requests, as they are unsupported by any argument, citations to the record, or legal authority.  (*Delta Stewardship*, *supra*, 48 Cal.App.5th at p. 1075; *Hernandez*, *supra*, 37 Cal.App.5th at p. 277.)

Finally, having found no error or abuse of discretion, we reject Parker's request for reversal based on cumulative error.

## DISPOSITION

The orders granting the Freibergers' motion to quash and denying Parker's motion for reconsideration are affirmed. The Freibergers are awarded their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

HANASONO, J.

We concur:

EDMON, P. J.

EGERTON, J.

21