Filed 11/4/20  Le v. Le CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| NHU LE, | B295264 |
| Plaintiff and Appellant, | Los Angeles County |
| v. | Super. Ct. No. EC065531 |
| HUONG T. LE et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, C. Edward Simpson and Timothy Patrick Dillon, Judges.  Affirmed.

The Chang Firm and Randy Chang for Plaintiff and Appellant.

Sundstedt & Goodman Law Offices and Lani M. Goodman for Defendants and Respondents.

———————————

This appeal arises from a family dispute over commercial property located at 9526-9532 Gidley Street in Temple City (property). Plaintiff and appellant Nhu Le (plaintiff) sued his sister Huong T. Le and brother-in-law Dinh Vu (collectively, defendants) after they sold the property sometime in 2016 without sharing the proceeds with him. Plaintiff alleged he and defendants had entered into an oral partnership agreement in 2003 to purchase and jointly own the property. Plaintiff asserted claims against defendants for breach of contract, breach of fiduciary duty, promissory estoppel, and fraud arising from the alleged agreement. After a three-day bench trial, the trial court found insufficient evidence of any such agreement and entered judgment in favor of defendants.

Plaintiff appeals from the judgment on the ground the evidence—primarily, a transcript of a recorded conversation between the parties and other family members—shows defendants admitted plaintiff owned part of the property. We conclude substantial evidence supports the trial court's judgment and affirm.

## FACTS AND PROCEDURAL BACKGROUND

We summarize the facts, in the light most favorable to the judgment, gleaned from the trial court's statement of decision, the trial exhibits received into evidence, and plaintiff's trial brief. The record on appeal does not include a reporter's transcript.

### 1. *Plaintiff's allegations and evidence*

In November 2002, plaintiff saw the property and wanted to buy it. Because he speaks limited English, plaintiff asked his sister Mai Le,[1] who worked for him, to help him with the purchase. Plaintiff also was worried he would be unable to

---

[1] Plaintiff also sued Mai Le, but dismissed her from the complaint.

2

obtain a loan to buy the property because he was self-employed. He owned Le Cabinets & Salon Design, formerly, Le's Furniture & Upholstery. As a result, Mai[2] allegedly approached their other sister, defendant Huong Le, for assistance. Plaintiff asserted he, Huong, and her husband, defendant Dinh Vu, orally agreed defendants and Mai would be the actual buyers of the property, but plaintiff would contribute $135,000 toward the down payment and defendants would contribute $55,000.[3] According to plaintiff, the parties orally agreed to add his name to the property title after the close of escrow.

Defendants and Mai obtained a loan from Standard Bank to buy the property. Escrow closed on the property in February 2003. The closing statement lists Huong, Dinh, and Mai as the buyers of the property for $377,000. The purchase price was paid as follows: Mai deposited $10,000, Dinh deposited $246,619.68, and $125,000 from a first trust deed to Standard Bank made up the remainder. Plaintiff alleged he paid the closing costs associated with the purchase, totaling about $9,000, but presented no evidence showing he did.

Plaintiff began to make the mortgage payments on the property directly to Standard Bank sometime after escrow closed. Plaintiff's business made payments to the bank between June 2003 and September 2005 in amounts ranging from $749 to $1,000. Plaintiff also alleged he made repairs to the property,

---

[2] We refer to individuals by their first names to avoid confusion and for readability. We do not intend any disrespect by doing so.

[3] At trial, plaintiff apparently testified that he gave Mai $135,000 in cash, over time, for the purpose of buying the property.

3

totaling $31,000,[4] paid "some or most of the carrying costs" for the property, and leased out part of the property as "the landlord," without objection from defendants.

In 2006, defendants refinanced the Standard Bank loan with Bank of America, resulting in a $1,340 monthly payment. Defendants allegedly asked plaintiff to start paying them that amount. At trial, plaintiff introduced checks from his and his wife's personal checking account payable to Dinh in the amount of $1,340 each, dated March, April, June, July, and August 2010.[5]

In September 2010, defendants allegedly asked plaintiff to pay $1,400 per month. The evidence shows plaintiff made $1,400 payments to Dinh, from the same joint account, between May 2011 and May 2015, and $100 payments between June and December 2015.[6]

Plaintiff also introduced a June 2016 check from the joint account directly paying the second installment of property taxes due on the property in the amount of $2,528.07, as well as statements showing he made insurance payments for his business.

At some point, plaintiff allegedly discovered his name had not been added to the title for the property. On January 30, 2016, he met with defendants and other relatives to discuss

[4]     Nothing in the record shows plaintiff paid $31,000 in repairs or to renovate the property.

[5]     Mai quitclaimed her share of the property to defendants in October 2009.

[6]     Based on the memo line on the checks, each payment was made to cover an earlier month's payment. For example, the May 2011 check is noted to be for December's payment (presumably 2010), the September 2011 check is for February's payment (presumably 2011), and so on.

4

the title of the property. Plaintiff recorded their conversation, which was in Vietnamese.[7] Plaintiff retained a certified court interpreter (the translator) who translated the recording into English in a written transcript that he certified on October 30, 2018.[8] At trial, plaintiff contended that during that conversation defendants admitted they did not add plaintiff to the property title to avoid tax consequences, they should resolve their dispute with plaintiff by selling the property and paying him 50 percent of the proceeds, and Mai applied for the loan from Standard Bank for plaintiff.

Sometime after the January 2016 meeting, defendants sold the property to another buyer for $1,083,500. Plaintiff's lawsuit, filed in August 2016, sought to recover two-thirds of that amount plus punitive damages.

## 2. *Statement of decision*

Plaintiff's claims were tried over three days in a court trial. The following witnesses testified: Plaintiff; the translator who translated and transcribed the recorded January 2016 conversation; Hue Le (plaintiff's sister-in-law); defendant Huong Le; plaintiff's wife; Bryan Tran (plaintiff's friend); and defendant Dinh Vu. The trial court took the matter under submission after closing arguments on November 7, 2018. Later that same day, the trial court issued a written tentative decision, which ultimately became the court's statement of decision under Code of Civil Procedure section 632.[9]

---

[7] Plaintiff says he recorded the conversation with the participants' permission.

[8] The trial court received the transcript into evidence, but not the audio recording.

[9] Defendants had requested a statement of decision.

5

The trial court rejected plaintiff's testimony that he gave his sister Mai Le $135,000 in cash to purchase the property. The court noted Mai's testimony would have been stronger evidence, stating, "When a party produces weaker evidence when it could have produced stronger evidence the trier of fact may distrust the weaker evidence." (Evid. Code, § 412.) The court acknowledged Mai lived outside of the court's jurisdiction, but noted plaintiff could have compelled her testimony through an out of state deposition. The court concluded there was insufficient evidence for it to find an agreement between plaintiff and Dinh Vu for the purchase or ownership of the property. The court explained, "At best plaintiff's business was to occupy a portion of the property and pay the mortgage payments directly to the bank in lieu of paying rent directly to his brother-in-law. That finding is consistent with plaintiff paying rent directly to his brother-in-law after the brother-in-law refinanced the property."

The court thus found no fiduciary duty existed between the parties, as they "were simply family members," and no breach of contract occurred because there was no agreement. The court also concluded plaintiff failed to prove promissory estoppel or fraud.

On November 16, 2018, plaintiff asked the court to clarify its statement of decision about defendants' admissions in the transcribed January 2016 conversation, and excerpted certain statements from the transcript for the court to consider. The court denied the request and, on January 4, 2019, entered judgment in favor of defendants.

## DISCUSSION

Plaintiff challenges the trial court's factual findings. He contends the only conflict between the parties is the ownership of the property and that the evidence demonstrates defendants agreed he jointly owned the property with them.

6

## 1.    *Standard of review*

We review a challenge to the sufficiency of the evidence under the familiar substantial evidence standard.  (*Lenk v. Total-Western, Inc.* (2001) 89 Cal.App.4th 959, 968.)  " ' "We must therefore view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor." ' "  (*Ibid.*)  Our power thus "begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support" the trial court's findings.  (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873-874, italics omitted.)  We defer to the trial court's credibility determinations and " ' "the truth or falsity of the facts upon which a determination depends." ' [Citation.]"  (*Oldham v. Kizer* (1991) 235 Cal.App.3d 1046, 1065.)

Where, as here, " 'the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law.  [Citations.]  Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' "  (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 466 (*Sonic*); see *In re R.V.* (2015) 61 Cal.4th 181, 201 [where appellant failed to meet its burden of proof in the trial court, "the inquiry on appeal is whether the weight and character of the evidence . . . was such that the [trial] court could not reasonably reject it"].)  Indeed, when judgment has been entered against the party who had the burden of proof at trial, " 'it is almost impossible for him to prevail on appeal by arguing the evidence compels a judgment

7

in his favor.' " (*Atkins v. City of Los Angeles* (2017) 8 Cal.App.5th 696, 734.)

Moreover, because a judgment or order challenged on appeal is presumed to be correct, "it is the appellant's burden to affirmatively demonstrate error." (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573.) " 'All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' " (*Denham v. Superior Court of Los Angeles County* (1970) 2 Cal.3d 557, 564.) To overcome this presumption, an appellant must provide a record that allows for meaningful review of the challenged order. (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187.) When an appellant proceeds without a reporter's transcript of the proceedings, as plaintiff has done here, "[t]he trial court's findings of fact and conclusions of law are presumed to be supported by substantial evidence and are binding on the appellate court, unless reversible error appears on the record." (*Bond v. Pulsar Video Productions* (1996) 50 Cal.App.4th 918, 924; *In re Marriage of Obrecht* (2016) 245 Cal.App.4th 1, 8-9 [in absence of reporter's transcript appellate court " 'must . . . presume that what occurred at that hearing supports the judgment' "].) In other words, we "presume[ ] that the unreported trial testimony would demonstrate the absence of error." (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992.)

## 2. *Substantial evidence supports the judgment*

All of plaintiff's claims are grounded on the premise that he and defendants agreed in late 2002 or early 2003 to purchase and own the property jointly. After listening to the testimony and studying the exhibits, the trial court found insufficient evidence of any agreement between the parties concerning the ownership of the property. Nevertheless, plaintiff contends substantial evidence supports his claims against defendants.

8

Plaintiff misapprehends our standard of review. "We do not review the evidence to see if there is substantial evidence to support the losing party's version of events, but only to see if substantial evidence exists to support the [judgment] in favor of the prevailing party." (*Pope v. Babick* (2014) 229 Cal.App.4th 1238, 1245.) And, because plaintiff bore the burden of proof at trial, to warrant reversal, he must demonstrate the evidence could lead only to a judgment in his favor. (*Sonic, supra,* 196 Cal.App.4th at p. 466.)

Plaintiff relies on the evidence that he made mortgage payments directly to Standard Bank and to Dinh and on the translated transcript of the recorded 2016 family meeting. Without a reporter's transcript, we presume the trial testimony supports the judgment. We thus consider only whether the documentary evidence in the record requires us to find in plaintiff's favor. We conclude it does not.

First, plaintiff's payments to the bank and defendants is not uncontradicted evidence of their agreement to own the property jointly, much less compelling evidence plaintiff in fact performed as he alleges. As defendants note, plaintiff's evidence shows he paid only a combined total of $51,622.21 to Standard Bank and Dinh between June 2003 and December 2015. Plaintiff also presented evidence he paid one installment of the property taxes for the property in 2016. The evidence substantially supports the trial court's finding that plaintiff was making rental payments to defendants, in the amount of the mortgage, to occupy all or part of the property,[10] not paying the mortgage

---

[10] Plaintiff also argues defendants' lack of objection to his renting out portions of the property to other tenants and keeping the rent shows defendants agreed he owned a portion of the property. That may be one interpretation of the evidence, but it is not the only plausible interpretation. We can infer the trial

9

as an owner. It is not unreasonable for a landlord to pass on its costs, such as the mortgage, taxes, or other assessments, to a tenant. Moreover, the evidence certainly does not show plaintiff contributed to the property's purchase price. The court rejected plaintiff's testimony that he gave his sister Mai $135,000 in cash to buy the property, and $51,622.21 is nowhere close to the $125,000 defendants borrowed from Standard Bank to finance the purchase. We will not second guess the trial court's credibility determination. And, as we discuss, plaintiff presented no other evidence he paid for a one-half interest—much less two-thirds interest—in the property.

Plaintiff's primary contention is that the transcript of the 2016 family meeting is clear evidence of the parties' agreement thirteen years earlier to purchase and own the property together.[11] We disagree.

Extracting several statements from the 33-page transcript, as he did at trial, plaintiff argues they "undoubtedly evidence that the parties had an agreement concerning" the property and that defendants "acknowledged" plaintiff owned 50 percent of the property. He also contends the transcript shows defendants agreed to pay plaintiff 50 percent of the proceeds from the sale of the property or about $200,000. A sample of the translated statements plaintiff cites follows:

court found plaintiff rented the property from defendants, and they permitted him to sublet the part of the property his business did not occupy.

[11] Although a contract to purchase property is subject to the statute of frauds (Civ. Code, § 1624, subd. (a)(3)), defendants agree a partnership agreement or joint venture concerning real property is not. (*Kaljian v. Menezes* (1995) 36 Cal.App.4th 573, 583-585 (*Kaljian*).)

10

- Huong: "Because we are the siblings so you (Nhu Le) still own the building. Frankly speaking, if we're not siblings, you (Nhu Le) already lost the building."
- Huong: "You (Nhu Le) didn't borrow $125,000. So why you wanted me to get a loan for you with the amount of $165,000. If you didn't borrow $125,000, where do you get $165,000 to pay for $125,000? You (Nhu Le) only need to know that you borrow $165,000 from me."
- Dinh: "Let me explain: Mai doesn't understand English. She just deposited, put (the money) in. Each person put down an amount. Indeed, Do (Nhu Le) didn't put down $135,000. Honestly speaking: he had $60,000."
- Huong: "I speak. Three people on the Title are: My-self, Dinh, my husband and my sister, Mai. If take Mai off (Title) so . . . will lose one third. That man (unknown), he said like that. If right now, I give to brother Đo (Nhu Le) half of the property, the Tax Collector (Property Tax) might think that I sale a half of the property and the Tax will be increased instead $600,000.00 to one million, right?"
- Huong: "I said: at least, at least you'll take home $200,000. Actually how much, I just estimated. I said: I guessed."
- Huong: "One half is still yours (Nhu Le)."
- Dinh: "Now I going to sell the Property, half is yours (Nhu Le) and half is mine."
- Dinh: "Now you own 50%. We are just talking. Based on the papers, you don't have the rights. 100% I will sell it."

These statements—taken out of context and with nuance potentially lost in the translation—could be interpreted in a

myriad of ways. For example, the trial court reasonably could conclude the excerpts plaintiff cites—when read with the rest of the 33-page transcript—reflect a *discussion* or a *negotiation* about the sale of all or part of the property to plaintiff, not defendants' admission plaintiff already owned half. (See, e.g., *Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 812 (*Weddington*) [" '[I]f an essential element is reserved for the future agreement of both parties, as a general rule the promise can give rise to no legal obligation until such future agreement.' "].) Similarly, Huong's purported statement about plaintiff "tak[ing] home $200,000" reasonably could be interpreted as reflecting plaintiff's potential return upon the sale of the property if he paid defendants the $125,000 or $165,000 that he purportedly borrowed, as reflected in the transcript. Indeed, although the parties purportedly discussed plaintiff having borrowed $125,000 or $165,000, but having only $60,000, nowhere do defendants agree plaintiff *actually paid* $60,000 toward a joint purchase of the property, as plaintiff argues. Moreover, the transcript itself supports the court's implied finding that the evidence of the 2016 meeting was insufficient to show plaintiff contributed to the purchase of the property. For example, a family member suggested plaintiff pay Huong what he owed her and then defendants would "be authorized to return [to] you (Nhu Le) the property."

We need not speculate, however. The trial court considered the transcript having received it into evidence. It heard the testimony about the transcribed statements, if any, and assessed the credibility of the witnesses. In essence, plaintiff is asking us to reweigh the evidence. This we will not do; we presume the unreported trial testimony supported the trial court's findings. We thus reasonably can infer the trial court rejected plaintiff's interpretation of the 2016 conversation—held almost 13 years

12

after the parties' purported agreement—and gave the transcript —translated by an individual who was not present and had no personal knowledge of the events—little weight.[12]  In short, the transcript is not of the caliber " ' "to leave no room for a judicial determination that it was insufficient to support a finding" ' " that an agreement to buy and own the property jointly existed. (*Sonic, supra*, 196 Cal.App.4th at p. 466.)

Moreover, "[c]ontract formation requires mutual consent, which cannot exist unless the parties 'agree upon the same thing in the same sense.'  (Civ. Code, § 1580; see also §§ 1550, 1565.)" (*Bustamante v. Intuit, Inc.* (2006) 141 Cal.App.4th 199, 208 (*Bustamante*).)  "If there is no evidence establishing a manifestation of assent to the 'same thing' by both parties, then there is no mutual consent to contract and no contract formation."  (*Weddington, supra*, 60 Cal.App.4th at p. 811.) A contract also must be sufficiently definite to be enforced. (*Bustamante*, at p. 209.)  " 'Where a contract is so uncertain and indefinite that the intention of the parties in material particulars cannot be ascertained, the contract is void and unenforceable.' " (*Ibid.*)  In other words, " '[i]f . . . a supposed "contract" does not provide a basis for determining what obligations the parties have agreed to, and hence does not make possible a determination of

---

[12]     The translator did not translate the audio recording into the certified transcript until the eve of trial in late October 2018. He was not a party to the January 2016 conversation, and there is no evidence he personally knew the participants.  Throughout the transcript are parentheticals to show to whom or to what the identified speaker is referring.  The trial court reasonably could presume plaintiff aided the translator in not only identifying the speakers, but also the persons to whom they were speaking and the subject matter.

13

whether those agreed obligations have been breached, there is no contract.' " (*Ibid.*)

The transcript does not reflect the parties' mutual agreement to enter into a partnership in 2002/2003 to purchase and own the property. Nor does the evidence reflect the parties' obligations under the purported agreement. Even if the parties *discussed* jointly purchasing and owning the property back in 2002/2003, the transcript does not demonstrate they reached a mutual understanding as to the terms of any such agreement at that time or at a later date.[13] (*Bustamante, supra*, 141 Cal.App.4th at p. 215 [" '[T]he failure to reach a meeting of the minds on all material points prevents the formation of a contract *even though the parties have orally agreed upon some of the terms, or have taken some action related to the contract.*' "].) And even if we were to interpret the transcript as showing Huong promised to pay plaintiff part of the proceeds from the property's sale, which she disputed, " 'An agreement by a landowner to share with another profits to be derived from the sale of land does not, without more, create a partnership or joint venture relationship. [Citations.]' " (*Kaljian, supra,* 36 Cal.App.4th at p. 586.)

If anything, the only fact "undoubtedly demonstrated" by our review of the 33-page transcript is that the parties had not reached, as defendants note, a " 'meeting of the minds' " concerning what—if anything—they had agreed to thirteen

---

[13] The record also includes an unsigned form offer, agreement, and escrow instructions for the property dated November 25, 2002, and listing plaintiff and Mai as the buyers. The unsigned form also does not compel a finding plaintiff and defendants *reached agreement* on the terms of a purported partnership to purchase the property, only that Mai and plaintiff considered the possibility. We also note Mai was not present during the 2016 family meeting.

14

years earlier about the ownership of the property.  Rather, the transcript reveals a dispute between relatives primarily about a loan, the payment of costs and expenses associated with the property, and the potential sale of the property.  Plaintiff may have believed his payments for occupying the property and alleged expenditures for its renovation, about which he provided no evidence, entitled him to an ownership interest, but the transcript does not prove the parties agreed that he owned part of the property.

As substantial evidence supports the trial court's finding that the parties did not enter into a partnership agreement to co-own the property, the court did not err in finding no basis for plaintiff's breach of contract claim or for his claim defendants— as mere family members—owed him a fiduciary duty.  Similarly, because the evidence does not compel a finding that defendants promised plaintiff anything, there was nothing for plaintiff to have relied on to support his promissory estoppel or fraud causes of action.

## DISPOSITION

The judgment is affirmed.  Respondents are entitled to their costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EGERTON, J.

We concur:



EDMON, P. J.



LAVIN, J.