[No. D040086. Fourth Dist., Div. One. Sept. 19, 2002.]

ANDREW MUCKLE, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
CASSANDRA BURGESS-MUCKLE, Real Party in Interest.

**COUNSEL**

Stephen Temko and Barbara Goldberg for Petitioner.

No appearance for Respondent.

Richard A. Thomas & Associates, Richard A. Thomas, Jill M. Church; and Karyn Massie for Real Party in Interest.

## OPINION

**HUFFMAN, J.**—Andrew Muckle (Andrew) petitions for a writ of mandate commanding respondent court to vacate its order of April 4, 2002, denying his motion to quash service of summons in the action commenced by real party in interest Cassandra Burgess-Muckle (Cassandra)[1] for dissolution of their 11-year marriage, spousal support and property division, or dismiss the action on the ground of inconvenient forum, and to enter a new and different order granting the motion.[2] The question raised is whether, consistent with the due process clause of the United States Constitution, California can exercise personal jurisdiction over Andrew, who has been domiciled in Georgia since December 1998. Based on the record presented, we answer the question in the negative and issue a writ of mandate to prevent the court from exercising such jurisdiction.

### BACKGROUND AND PROCEDURE

Andrew and Cassandra met in Georgia, where Andrew lived and worked and Cassandra visited her mother. When Cassandra's mother died in 1988, she moved into her mother's house in Georgia, where she resided continuously until marrying Andrew there in 1989. During their 11-year marriage they lived at various times in Georgia and California, separating and reconciling repeatedly. The couple had no children during their marriage.

In July 1998, while the parties were living in California, Andrew purchased a home in Georgia, taking title to it in his name alone. In December 1998, Andrew returned to Georgia to live in the house. Shortly thereafter Cassandra followed, eventually moving in with Andrew. In the spring of 2000, Cassandra returned to California and lived in a trailer Andrew bought for her. At some point, she sold the trailer, keeping the proceeds, and filed her petition for dissolution.

On about August 21, 2001, Cassandra served dissolution papers on Andrew in Georgia by substituted service. In those papers Cassandra claimed as community property both the home Andrew had bought in Georgia while living in California in 1998 and another house in Georgia that had been purchased in 1985 with title in Andrew's name and that of his son Phillip Muckle.

---

[1] We refer to the parties by their first names, not out of familiarity or disrespect, but for ease of reference and because such is the preferred practice in family law cases. (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 475, fn. 1 [274 Cal.Rptr. 911].)

[2] Andrew also requests costs incurred in this proceeding and any other relief this court deems just and proper.

On March 1, 2002, Andrew made a special appearance to contest jurisdiction (Code Civ. Proc., § 418.10; Cal. Rules of Court, rule 1234), moving to quash service of summons for lack of personal jurisdiction or, alternatively, to stay or dismiss the action on the ground of inconvenient forum. He argued he had insufficient minimum contacts with California for the trial court to establish personal jurisdiction over him, and, alternatively if such were found, the court should dismiss the action on the ground of forum non conveniens. (Code Civ. Proc., § 410.30.) In his supporting declaration, Andrew noted he was 65 years old, had lived in Georgia continuously since December 1998, had worked and paid taxes in Georgia, had a Georgia driver's license, was registered to vote in Georgia, had no personal or real property in California, and asserted he could not afford to travel to California to "fight this litigation [or] transport witnesses to verify [his] rights and interests in the houses [he] own[ed] in Georgia."

Cassandra countered Andrew's position, declaring he had been a resident of California from January 1998 through December 1998, that the subject property had been bought in Georgia in July 1998, thus making it community property under Family Code section 760,[3] that Andrew had refused to submit to the court's jurisdiction to determine her community property interests in such property, and that she was "too ill to travel to Georgia to litigate this matter."

At the March 11, 2002 hearing on the matter, Cassandra's counsel conceded there were not minimum contacts for personal jurisdiction over Andrew for spousal support purposes, but argued the trial court did not need personal, only "in rem," jurisdiction over him to divide his home in Georgia because it was purchased during the marriage while he was living in California. The court took the matter under submission on the agreed upon issue of whether the court had jurisdiction to determine the rights of the parties in the Georgia property that was purchased while the parties resided in California.[4] That same date, Andrew filed supplemental points and authorities supporting his motion to quash, arguing the same "minimum contacts" standard necessary for personal jurisdiction over a person was also

[3]Family Code section 760 states that, "Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property."

[4]Although the court found there was no showing of due diligence at the time of the hearing to find that Andrew was properly served in Georgia by substituted service, it impliedly treated the matter as waived when Andrew's counsel stated he preferred the court make an immediate decision on the issue of minimum contacts regarding the Georgia property rather than continue the matter so Cassandra could show substituted service was proper.

required to exercise in rem or quasi in rem jurisdiction when property rights were asserted.[5]

On March 14, 2002, Cassandra filed points and authorities in opposition to Andrew's motion to quash, arguing Andrew had maintained sufficient minimum contacts with California due to his "purposeful availment" of privileges of conducting activities in California by residing and working in California for over 10 years before returning to Georgia in 1998, by filing and receiving $150,000 on a workers' compensation claim against his Escondido employer, by using $70,000 of those funds for his down payment on the property he purchased in Georgia while the parties were married and lived in California, and by traveling from Georgia to California on numerous occasions. Cassandra asserted it was reasonable to exert jurisdiction over Andrew because of his above affirmative conduct and the facts he was in "excellent health," while she was "suffering from an attack on her auto-immune system which makes walking for her more difficult each day." She stated she had been a resident of California for over 10 years and that California had a strong public policy of equal division of community property for which she did not have an alternative forum to litigate her interests because Georgia is not a community property state. She further asserted that " 'progress in communications and transportation has made the defense of a suit in a foreign tribunal less burdensome. [Citation.]' " Cassandra filed no declaration or evidence in support of the factual allegations contained in her papers filed after the matter was taken under submission.

On April 4, 2002, the trial court issued its order on the matter, "[a]fter considering the Briefing filed by the parties, both before and after the hearing and entertaining oral argument," as follows: "1. The Court denies [Andrew's] companion Motion to Quash Service of Process. The factual basis for this ruling is that the parties had an 11-year marriage with no children. They met and married in Georgia and lived in both Georgia and California. The parties lived in California until at least December of 1998. While in California, [Andrew] rented an apartment in Vista from January, 1998 through December of 1998. He purchased property in Georgia while he was still a resident in California. He was a California resident for ten (10) years prior to December of 1998. He filed a worker's compensation claim against an Escondido employer while a resident of California. He received $150,000 from the worker's compensation claim while a resident in California and used $70,000 of these funds to purchase property in Georgia. [¶] 2. Under these circumstances, the Court believes that [Andrew] has 'minimum contact with a forum state, such that maintenance of the suit does

---

[5]It is unclear from this record whether Andrew's supplemental authorities were received by the court before, during or after the hearing on the matter.

not offend traditional notions of fair play and substantial justice." (*In re Marriage of Lontos* (1979) 89 Cal.App.3d 61 [152 Cal.Rptr. 271] (*Lontos*), citing *Internat. Shoe Co. v. Washington* (1945) 326 U.S. 310 [66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057] (*International Shoe*).)

The court also noted authority for its ability to adjudicate the rights of the parties to the property in Georgia, and stated "[t]he pivotal factor[s] for the Court in this matter in determining minimum contacts are the fact that [Andrew] lived in California and availed himself of the protections offered by this forum during his period of residency, including participation in the California Worker's Compensation program."

Andrew thereafter filed the current petition for writ of mandate, challenging the trial court's ruling denying his motion to quash service of summons. (Code Civ. Proc., § 418.10.) We issued an order to show cause why the relief requested should not be granted and set the matter for oral argument.

### DISCUSSION

In general, "jurisdiction" to adjudicate matters in a marital case involves three requirements: 1) that the court have authority to adjudicate the specific matter raised by the pleadings (subject matter jurisdiction) (see Fam. Code, § 2010); 2) that the court have "in rem" jurisdiction over the marital "res" to terminate marital status ("in rem" jurisdiction) (see *In re Marriage of Zierenberg* (1992) 11 Cal.App.4th 1436, 1444-1445 [16 Cal.Rptr.2d 238]); and 3) that the court have jurisdiction over the parties to adjudicate personal rights and obligations (personal jurisdiction). (See Code Civ. Proc., § 410.10; *Burnham v. Superior Court* (1990) 495 U.S. 604 [110 S.Ct. 2105, 109 L.Ed.2d 631] (*Burnham*); *In re Marriage of Fitzgerald & King* (1995) 39 Cal.App.4th 1419, 1425 [46 Cal.Rptr.2d 558] (*Fitzgerald & King*).)

Once the court has met these jurisdictional requirements it may determine not only the marital status, but also the personal rights and obligations of the parties, including custody and support of minor children of the marriage, spousal support, settlement and division of the parties' property rights, and the award of costs and attorney fees. (Fam. Code, § 2010.) With regard to property rights, the court generally looks to the domicile of the parties at the time the property was acquired to characterize it as separate or community for the purposes of division upon a dissolution of the marital status. (*Grappo v. Coventry Financial Corp.* (1991) 235 Cal.App.3d 496, 505 [286 Cal.Rptr. 714].) "[M]arital interests in money and property acquired during a marriage are governed by the law of the domicile at the time of their acquisition, even when such money and property is used to purchase

real property in another state. [Citations.]" (*Ibid.*) California law provides that "[e]xcept as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property." (Fam. Code, § 760.) It is further settled California law that " 'a court having jurisdiction of the parties [in a dissolution action] may adjudicate their rights to land located in another state and that the adjudication is res judicata and is to be accorded full faith and credit in the situs state regardless of whether the decree orders execution of a conveyance. . . .' [Citations.]" (*In re Marriage of Economou* (1990) 224 Cal.App.3d 1466, 1479-1480 [274 Cal.Rptr. 473]; see also Fam. Code, § 2660.)

Here, the parties do not contest that the California trial court has subject matter jurisdiction and in rem jurisdiction to adjudicate the status of their marriage due to Cassandra's domicile in California at the time of filing her petition for dissolution. (See *In re Marriage of Gray* (1988) 204 Cal.App.3d 1239, 1250 [251 Cal.Rptr. 846].) Rather, the parties conflict only on whether the trial court can exercise personal jurisdiction over Andrew who is now a resident and domiciled in Georgia for purposes of adjudicating his rights in real property located in Georgia and for spousal support.

As the court in *Fitzgerald & King* noted, "[d]ue process permits the exercise of personal jurisdiction over a nonresident defendant in the following four situations:[6] (1) where the defendant is domiciled in the forum state when the lawsuit is commenced [citation]; (2) where the defendant is personally served with process while he or she is physically present in the forum state [citation]; (3) where the defendant consents to jurisdiction [citations]; and (4) where the defendant has sufficient 'minimum contacts' with the forum state, such that the exercise of jurisdiction would not offend ' "traditional notions of fair play and substantial justice" ' [citation]." (*Fitzgerald & King, supra,* 39 Cal.App.4th at pp. 1425-1426.) Because Andrew is not domiciled in California, was not personally served with process while present in California, and did not consent to jurisdiction, the trial court could only support its denial of his motion to quash the summons served on him in Georgia by predicating personal jurisdiction to determine any property rights of the marriage for division on Andrew having "minimum contacts" with California.

In determining whether such "minimum contacts" exist for a valid assertion of jurisdiction over a nonconsenting nonresident who is not present

---

[6]"California's 'long-arm' statute, Code of Civil Procedure section 410.10, empowers California courts to exercise personal jurisdiction to the full extent permitted by due process. It provides: 'A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States.' "

in the forum, a court must look at " 'the quality and nature of [the nonresident's] activity' in relation to the forum [to determine whether it] renders such jurisdiction consistent with ' " 'traditional notions of fair play and substantial justice." ' " (*Burnham, supra*, 495 U.S. at p. 618 [110 S.Ct. at p. 2115]; *International Shoe, supra*, 326 U.S. at pp. 316, 319 [66 S.Ct. at pp. 158, 159-160].) Although the existence of sufficient "minimum contacts" depends on the facts of each case, the ultimate determination generally rests on some conduct by which the nonresident has purposefully availed himself of the privilege of conducting activities within the forum state to invoke its benefits and protections, and a sufficient relationship or nexus between the nonresident and the forum state such that it is reasonable and fair to require the nonresident to appear locally to conduct a defense. (*Kulko v. Superior Court of California* (1978) 436 U.S. 84, 93-94, 96-97 [98 S.Ct. 1690, 1697-1698, 1699-1700, 56 L.Ed.2d 132] (*Kulko*); *Khan v. Superior Court* (1988) 204 Cal.App.3d 1168, 1175-1176 [251 Cal.Rptr. 815] (*Khan*).) This latter "fairness" finding requires a balancing of the burden or inconvenience to the nonresident against the resident plaintiff's or petitioner's interest in obtaining effective relief, and the state's interest in adjudicating the particular dispute, which ultimately turns on the nature and quality of the nonresident's forum-related activity. (*Kulko, supra*, 436 U.S. at p. 94 [98 S.Ct. at p. 1698]; see also *Khan, supra*, 204 Cal.App.3d at pp. 1179-1180.)

■ Where as here, in an initial family law proceeding for marriage dissolution, a nonresident moves to quash for defective personal jurisdiction on grounds he lacks minimum contacts with the forum state, the court looks at the contacts at the time of the proceeding and not on whether past minimum contacts might suffice. (*Tarvin v. Tarvin* (1986) 187 Cal.App.3d 56, 60-61 [232 Cal.Rptr. 13].) ■ When the contacts are "substantial, continuous and systematic," general personal jurisdiction may be exercised as to any cause of action, even one unrelated to the nonresident's activities within the forum state. (*Perkins v. Benguet Mining Co.* (1952) 342 U.S. 437, 447-448 [72 S.Ct. 413, 419-420, 96 L.Ed. 485].) Even when the nonresident's contacts are not "substantial, continuous and systematic" forum-state acts, a court may still exercise "specific" personal jurisdiction limited to claims arising out of the forum-related acts. (*Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 472-473 [105 S.Ct. 2174, 2181-2183, 85 L.Ed.2d 528] (*Burger King*).)

The test for whether a court may exercise "specific" personal jurisdiction requires that the nonresident purposefully directed his acts to the forum state or otherwise purposefully established contacts with the forum state, that the cause of action be related to or arise or result from the acts or contacts in the forum, and that the exercise of personal jurisdiction by the forum would be

reasonable. (*Burger King, supra*, 471 U.S. at pp. 476-478 [105 S.Ct. at pp. 2184-2185]; see *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 446-448 [58 Cal.Rptr.2d 899, 926 P.2d 1085] (*Vons*); *In re Marriage of Hattis* (1987) 196 Cal.App.3d 1162, 1173 [242 Cal.Rptr. 410] (*Hattis*).)

■  As the court in *Vons*, stated: "When a [nonresident] moves to quash service of process on jurisdictional grounds, the plaintiff [or petitioner] has the initial burden of demonstrating facts justifying the exercise of jurisdiction. [Citation.] Once facts showing minimum contacts with the forum state are established, however, it becomes the defendant's burden to demonstrate that the exercise of jurisdiction would be unreasonable. [Citation.] When there is conflicting evidence, the trial court's factual determinations are not disturbed on appeal if supported by substantial evidence. [Citation.] When no conflict in the evidence exists, however, the question of jurisdiction is purely one of law and the reviewing court engages in an independent review of the record. [Citation.]" (*Vons, supra*, 14 Cal.4th at p. 449.)

■  In this case, Cassandra had the initial burden of establishing facts to justify the trial court's exercise of personal jurisdiction over Andrew with regard to determining the rights of the parties in the Georgia property admittedly purchased while Andrew lived in California during his marriage to Cassandra. At the time the matter was taken under submission, those were the only facts supported by evidence before the court concerning Andrew's contacts with the state of California other than the length of the marriage, that it was entered into in Georgia, that there were no children of the marriage, that the parties lived at various times in Georgia and California, separating and reconciling repeatedly during the marriage, that Andrew left California in December 1998, and that Cassandra followed him to Georgia to live with him shortly thereafter. Although there was evidence that sometime after Cassandra left Andrew in Georgia to return to California to live in the spring of 2000, he bought a trailer in California for her, there were no underlying facts established as to whether Andrew came to California at that time or merely gave Cassandra the money to use to purchase the trailer. Regardless, evidence showed that the trailer had been sold before Cassandra filed her schedule of assets and debts in the dissolution action she filed in California. Thus, at the time of the motion to quash hearing, there was no evidence of any contacts by Andrew with California at the time the dissolution action was filed by Cassandra; only past contacts with California by Andrew were shown.

The trial court, however, took into consideration unsubstantiated "alleged facts" in Cassandra's points and authorities in opposition to the motion filed

after the matter was taken under submission regarding Andrew's additional past and arguably continuing contacts with California to support its denial of the motion. In addition to the court considering new material after an issue was taken under submission, there was no evidence in the record to support the assertions by Cassandra that Andrew lived and worked in California for 10 years before he departed for Georgia in December 1998, or that he received and then used money from the settlement of a California workers' compensation claim to purchase the property he bought in Georgia in July 1998. The trial court relied heavily on such facts to find that Andrew had so availed himself of the benefits of this state in the past that traditional notions of fair play and substantial justice would not be offended by making him appear in California to defend his rights to the property in Georgia. On the paucity of evidence in this record, we cannot find the trial court's finding of minimum contacts for personal jurisdiction over Andrew supported by substantial evidence. Nor does our independent review of the matter render a different conclusion.

Unlike the situation in *Lontos, supra,* 89 Cal.App.3d 61, which the trial court cited as authority for finding personal jurisdiction, the parties did not meet or marry in California, they did not have any children in California, they did not live in California at the time of the separation, and there is no evidence Andrew abandoned Cassandra or failed to provide for her after the separation. In *Lontos,* the parties had met and married in California; one of their three children was born in California; they had lived continuously in California for six years before they moved to New Mexico where the husband, who was in the United States Marine Corps, had been transferred. (*Lontos, supra,* 89 Cal.App.3d at pp. 64-65.) The husband then abandoned his wife and three children, leaving them $10 for support; and the wife and children returned to San Diego and obtained welfare assistance when husband refused to pay court-ordered support. (*Ibid.*) Based on these facts, the court in *Lontos* found that the husband's contacts in California, together with his abandonment of the family, which constituted "proof of a purposeful causing of an effect creating a substantial contact in California," were "of such quality and nature that it [was] 'reasonable' and 'fair' to require him to conduct his defense in California." (*Id.* at pp. 71-72.)

Although "California has a manifest interest in providing effective means of redress for its residents" (*McGee v. International Life Ins. Co.* (1957) 355 U.S. 220, 223 [78 S.Ct. 199, 201, 2 L.Ed.2d 223]), we do not believe such interest coupled with the mere fact of past residency, during which a party while married purchased out of state property, is sufficient contacts of such nature and quality to entertain even "special" personal jurisdiction over Andrew consistent with " ' "traditional notions of fair play and substantial

justice." ' " (*Burnham, supra*, 495 U.S. at p. 618 [110 S.Ct. at pp. 2114-2115].) Andrew's contacts with California since 1998 have not been "substantial, continuous and systematic," and there is no evidence he purposefully directed any activities since that time in or toward California other than to provide some shelter for Cassandra.

However, even if we were to find that Cassandra had met her burden of showing Andrew had sufficient minimum contacts at the time she filed the dissolution action, we would find the exercise of personal jurisdiction over Andrew on this record unreasonable. Although Cassandra is purportedly of ill health, there is no evidence she is a burden on the state (as in *Lontos, supra*, 89 Cal.App.3d 61 or *Hattis, supra*, 196 Cal.App.3d 1162) or that she does not have financial resources to pursue her action on the division of the property and spousal support in Georgia after obtaining a dissolution of the marital status in California. As she noted in her declaration, " 'progress in communications and transportation has made the defense of a suit in a foreign tribunal less burdensome. [Citation.]' "

On the other hand, Andrew has submitted evidence to show he has been domiciled and has worked in Georgia since December 1998, has paid taxes there, has a Georgia driver's license, and only owns property in Georgia—thereby taking advantage of the benefits of that state. There is also evidence that the parties met and married in Georgia and lived in Georgia almost two years before they separated and Cassandra returned to California in 2000. Although Andrew does not mention anything about his health, he does say he is 65 years old and without much wealth, making it a financial burden to travel to California to "fight this litigation," which would entail transporting witnesses from Georgia to verify his rights and interests in the houses he owns in Georgia. Balancing these factors against those in favor of Cassandra due to her current residency in California and the state's connection to the parties marriage via her uncontested domicile here, and the fact any potential clash in the marital property laws of Georgia and California may be accommodated through application of Georgia's choice-of-law rules, we conclude it would be unreasonable or unfair to require Andrew to come to California to litigate issues of spousal support and property rights. Accordingly, a writ of mandate is proper to prevent the trial court from asserting personal jurisdiction over Andrew for purposes of determining such rights and support. (Code Civ. Proc., § 418.10, subd. (c).)

Having determined that the trial court erred in denying Andrew's motion to quash on the evidence properly before it, we need not address Andrew's additional arguments concerning judicial estoppel and forum non conveniens.

## DISPOSITION

Let a writ of mandate issue directing the Superior Court of San Diego to vacate its order of April 4, 2002, denying Andrew's motion to quash service of summons in the dissolution action and to enter a new and different order granting the motion and quashing the service of summons in such action. Costs are awarded to Andrew.

Benke, Acting P. J., and McConnell, J., concurred.