Filed 6/27/25  Marriage of Dhillon and Mangat CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

<table>
<tr><td>In re Marriage of PREET K. DHILLON and JASJIT S. MANGAT.</td><td></td></tr>
<tr><td>PREET K. DHILLON,<br><br>Respondent,<br><br>v.<br><br>JASJIT S. MANGAT,<br><br>Appellant.</td><td>A170101<br><br>(Alameda County<br>Super. Ct. No. 19024649)</td></tr>
</table>

In this marital dissolution proceeding, appellant Jasjit Mangat (the former husband of respondent Preet Dhillon) appeals after the trial court entered a judgment on reserved issues, including the characterization and division of property.[1]  Mangat contends principally that (1) the court lacked jurisdiction to render the judgment because Mangat is domiciled in India, and (2) Indian law governs the distribution of property located in India.  We

---

[1] On appeal, both parties have proceeded in propria persona (although Mangat was represented by newly substituted counsel at oral argument).  As we discuss further below, each party was represented by counsel during portions of the trial court proceedings.

1

conclude Mangat forfeited some of his appellate arguments, and as to the remainder, we find no error. We therefore affirm.

## I. BACKGROUND[2]

### A. *The Parties' Pleadings and the Termination of Marital Status*

On June 26, 2019, Dhillon (then represented by counsel) filed in Alameda County Superior Court a petition for dissolution of the parties' marriage. A box checked on the petition states Dhillon "has been a resident of this state for at least six months and of this county for at least three months immediately preceding the filing of this Petition." A proof of service subsequently filed with the superior court states that Mangat was personally served with summons in California (at the superior court) on July 15, 2019.

On August 14, 2019, Mangat (also represented by counsel) filed a response to the petition, in which he too requested dissolution of the marriage. Similar to Dhillon's petition, the boxes checked on Mangat's response state that he "has been a resident of this state for at least six months and of this county for at least three months immediately preceding the filing of" the petition; he confirmed this was true for Dhillon as well. Both the petition and the response state the parties married in 2003 and separated in March 2019.

The trial court granted Dhillon's request to bifurcate the issue of marital status, terminated the parties' marriage as of September 28, 2020, and entered a judgment reflecting this ruling on November 19, 2020. The

---

[2] We grant Dhillon's motion to augment the appellate record with certain documents that were filed in the trial court. (Cal. Rules of Court, rule 8.155(a)(1)(A).) We deny on relevance grounds Mangat's request that we take judicial notice of documents purporting to show his domicile several years after the parties' marriage was dissolved.

2

checked boxes and typed notations on this judgment reflect a finding that the court "acquired jurisdiction of" Mangat on July 15, 2019, when he was served with process. Also in support of the finding of jurisdiction, the judgment notes Mangat appeared in the action by filing on August 14, 2019 a response to Dhillon's petition for dissolution.[3]

## B. *Trial on Financial Issues*

The court later set a trial on reserved issues (including property division, reimbursements, and support) to begin on August 3, 2022. On July 11, 2022, Mangat (then still represented by counsel) filed a request to stay the trial "until after a threshold trial on subject matter jurisdiction and inconvenient forum is heard and decided."[4] The court denied the request. Mangat filed a writ petition in this court challenging the denial, and we summarily denied the petition on July 26, 2022.

Over eight days between August 3 and December 15, 2022, the trial court held a bench trial on financial issues, including property

---

[3] Similarly, in an order entered after the September 28, 2020 hearing on the marital status issue, the court stated: "The court finds that [Mangat] submitted to the jurisdiction of California courts by filing his Response on 8/14/2019. The parties are returned to the status of single persons as of 9/28/20."

[4] On the request form, Mangat included a summary of his argument against the court's exercise of jurisdiction, in which he relied in part on Family Code section 3428, a provision applicable to child custody proceedings. (Undesignated statutory references are to the Family Code.) Section 3428 provides that, with some exceptions, "if a court of this state has jurisdiction under this part because a person seeking to invoke its jurisdiction has engaged in unjustifiable conduct, the court shall decline to exercise its jurisdiction . . . ." (§ 3428, subd. (a).) As additional grounds for his assertion that "California has no subject matter jurisdiction," Mangat contended "California is an inconvenient forum and India is a more appropriate forum," and "the Court must communicate with Indian courts to decide which State (California or India) has subject matter jurisdiction."

3

characterization and division.  During trial, Dhillon represented herself; Mangat was represented by counsel.  Both parties testified.

A central disputed issue at trial was whether the parties' domicile was the United States or India.  Dhillon was born in the United States and is a United States citizen.  Mangat was born in India but lived for periods of time in the United States and became first a permanent resident and later, in 2011, a naturalized United States citizen.  The parties married in California in 2003.  During their marriage, they lived for periods of time in California, India, and Massachusetts.  Their daughter was born in 2005 in India; their son was born in 2017 in California.  Both children are United States citizens.

As summarized by the trial court, Dhillon testified that she never intended to relocate permanently to India, and that during the periods of time when the family lived in India, she considered herself an American expatriate.  She always intended to return to the United States.  For his part, Mangat testified that, although he lived in the United States for periods of time and became first a permanent resident and then a United States citizen, he always considered India his home and always intended to return there.

C. *The Court's Statement of Decision and Judgment*

After the conclusion of testimony and after receiving written closing arguments, the court deemed the matter submitted on September 1, 2023, and issued a tentative decision on December 1, 2023.  The parties filed objections as provided for in the tentative decision, and the court then issued its final statement of decision on January 24, 2024.

In the statement of decision, the court set forth a detailed summary of the parties' testimony pertaining to the domicile issue.  The court found Dhillon "for the most part, was a very credible witness on the 'domicile

4

issue'. Her testimony was clear, believable, consistent, logical, and backed up by corroborative evidence." As to Mangat in contrast, the court found "that, for the most part, [Mangat] was not a credible witness on the 'domicile issue'. His testimony was contradictory, conflicting, conclusory, self-serving, long-winded, condescending, and many times non-responsive and irrelevant to the issue at hand. He used the witness stand as a soapbox. His testimony lacked corroborative evidence."

The court then made findings pertaining to the domicile issue. The court noted the parties were married in California in 2003. In Dhillon's petition for dissolution filed in June 2019, and in Mangat's response filed in August 2019, each party stated they had been a resident of California for at least six months and a resident of Alameda County for at least three months. At the time of separation in March 2019, the parties were living together in their family home in Berkeley, California, with their two children. Dhillon and the two children are United States citizens by birth, and Mangat is a naturalized United States citizen since 2011.

The court found Mangat left India at age 22 in 1991, to pursue higher education in the United States, where he then worked in chemical engineering, investment banking, and consulting. He obtained master's degrees in the United States and applied for a "permanent residency 'green card'" in 2000.

The court found that, during their marriage, Dhillon and Mangat "lived in Bangalore, India from November 2003 to October 2005, in Delhi, India from October 2005 to May 2006, in Boston, Massachusetts from May 2006 to August 2009, in Sherman Oaks, California from August 2009 to October 2009, in Delhi, India from November 2009 to August 2018, and in Berkeley, California from 2018 to their date of separation in March of 2019."

At the time of trial, Dhillon and the children still lived in Berkeley, in the same house the parties rented together when the family moved from India to California.

The court noted Dhillon is a victim of domestic violence and obtained a restraining order protecting her and the children from Mangat's conduct.[5]

The court rejected Mangat's claim that the parties' intention was to remain in India and that he was surprised when Dhillon moved from India to California with the children in 2018. The court found instead that Mangat was actively involved in the family move to California in 2018. Mangat shopped for homes to purchase in the Berkeley area and attempted to secure a preapproval home loan; he was involved in securing the parties' daughter's admission to a private school in the East Bay; and he explored commute options for Dhillon and for the parties' daughter. Mangat voted in a statewide election in Alameda County in 2018; he no longer votes in India because he gave up his Indian citizenship to become a United States citizen in 2011. The court found that, while in India prior to the 2018 family move to California, Mangat had been planning for years to move back to the United States for the long term, as evidenced by his communications with colleagues and others.

The trial court stated that, over one year after Mangat submitted to the jurisdiction of the California courts (by filing a response to the dissolution petition and participating in the California legal proceedings), he "filed a lawsuit in the Family Court of India, to try and establish jurisdiction in India to 'restore his conjugal rights' and have [Dhillon] and the children

---

[5] In a prior appeal, we affirmed a trial court order making the restraining order permanent. (*Dhillon v. Mangat* (May 31, 2023, A162994) [nonpub. opn.].)

6

returned to India under the Hindu Marriage Act [citation]." As summarized by the trial court here, the Indian court dismissed the case and found Mangat " 'has not approached the Court with clean hands,' " because he did not disclose the place of the parties' marriage, and he concealed the fact that he had filed a response to the California dissolution petition and participated in the California proceedings. The Indian court found the California ruling granting divorce was binding on the parties.

The trial court in the present matter found that the testimony of Prosenjeet Banerjee, an expert proffered by Mangat to testify about Indian matrimonial law, was not "persuasive or relevant," because Mangat and his counsel had provided the expert only with selective "alleged facts." As a result, the expert "did not have sufficient foundation to allow him to provide the Court with credible and informed opinions on the matters he was retained to opine on."

After discussing the evidence, the court made findings and rulings pertaining to domicile, the applicability of California law, and the court's jurisdiction. As to domicile, the court found that, "The evidence in this matter is overwhelming that prior to [Dhillon] filing her Petition[] For Dissolution Of Marriage on June 26, 2019, and prior to [Mangat] filing his Response And Request For Dissolution Of Marriage on August 14, 2019, that [Dhillon's] and [Mangat's] domicile was in the State of California." The court stated Dhillon had met her burden to prove by a preponderance of the evidence that both parties' domiciles were in California. The court further ordered that "all issues in this case shall be decided pursuant to California Law, including, but not limited to, the issues of Child Custody and Timeshare, Child Support, Spousal Support, Property Characterization, Property Division and Attorney Fees, Costs and Sanctions." Finally, the

7

court concluded that "California has and will continue to have jurisdiction over the parties in this matter and jurisdiction to decide all issues in this action."

As to the characterization and division of property, the court noted the parties had stipulated that some assets, including certain properties in India, were Mangat's separate property. The court found other properties were community property. First, a residential property in Sunnyvale, California, which apparently was an investment property that the parties rented out, was purchased in 2013, during the parties' marriage, and was community property. The court found the value of the Sunnyvale property at the time of trial was about $1.1 million, and the mortgage balance was about $350,000. The court rejected a claim by Mangat for reimbursement under section 2640, because Mangat had not proven that any separate property contributions were made toward the purchase of the property. The court awarded the property to Dhillon, subject to the mortgage, and subject to her making an equalizing payment to Mangat.

The court also found that a "residence and real property" in Gurgaon, India (the Gurgaon property), was purchased during the parties' marriage with community funds. Title was taken in Mangat's name, and his parents were parties to the initial purchase, but the court found based on the trial evidence that Mangat's mother later sold her interest to the parties. The court found the property is the community property of the parties, and each party owns one half of the property. The court stated: "The community property presumption of Family Code § 760 controls and trumps any other

8

presumptions of title."[6]  The court found the fair market value of the Gurgaon property on the date of trial was $292,566, and there was no mortgage on the property.  The court awarded the Gurgaon property to Mangat and ordered him to pay Dhillon an equalizing payment of $146,283 (half the fair market value).

In addition to these properties, the court specified how various "community checking, savings, investment accounts and other financial accounts" were to be divided, with some accounts awarded to each party, "subject to an equalizing payment from one party to the other in the overall division of community property."  The accounts covered by this order included some "Indian Accounts" with a combined balance of over $1.2 million.  After addressing other matters, the court concluded the statement of decision by directing the parties to calculate a final equalizing payment owed by one party to the other in light of the court's orders.

On March 19, 2024, the court entered judgment consistent with its statement of decision.  In an order attached to the judgment, the court found the net equalizing payment owed by Mangat to Dhillon (to equalize the division of all community assets) was $547,036.  The court ordered that payment of this amount "shall be made by [Mangat] in US dollars within 30 days of entry of Judgment or else [Dhillon] will take next steps with the Court to enforce the terms of the Judgment."

Mangat (by then proceeding in propria persona) appealed the judgment.

---

[6] Section 760 states:  "Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property."

9

## II. DISCUSSION

### A. *Jurisdiction*

Mangat contends that his domicile is India, and that therefore the California trial court "lacked jurisdiction to render a property distribution judgment" in this matter. We disagree.

"In general, 'jurisdiction' to adjudicate matters in a marital case involves three requirements: 1) that the court have authority to adjudicate the specific matter raised by the pleadings (subject matter jurisdiction) (see Fam. Code, § 2010); 2) that the court have 'in rem' jurisdiction over the marital 'res' to terminate marital status ('in rem' jurisdiction) [citation]; and 3) that the court have jurisdiction over the parties to adjudicate personal rights and obligations (personal jurisdiction). [Citations.] [¶] Once the court has met these jurisdictional requirements it may determine not only the marital status, but also the personal rights and obligations of the parties, including custody and support of minor children of the marriage, spousal support, settlement and division of the parties' property rights, and the award of costs and attorney fees. (Fam. Code, § 2010.)" (*Muckle v. Superior Court* (2002) 102 Cal.App.4th 218, 225 (*Muckle*).) Mangat has not shown the court lacked jurisdiction here.

### 1. Personal Jurisdiction

Although Mangat is not always precise in his briefing as to which type of jurisdiction he is referring to, his principal argument on this point is that the court lacked personal jurisdiction over him because he is not domiciled in California. Without addressing at this point Mangat's challenge to the trial court's finding as to his domicile (an issue we discuss in part II.A.2, *post*), it is clear the court had personal jurisdiction over Mangat independent of any dispute about the domicile question.

10

" '[D]ue process permits the exercise of personal jurisdiction over a nonresident defendant in the following four situations: (1) where the defendant is domiciled in the forum state when the lawsuit is commenced [citation]; (2) where the defendant is personally served with process while he or she is physically present in the forum state [citation]; (3) where the defendant consents to jurisdiction [citations]; and (4) where the defendant has sufficient "minimum contacts" with the forum state, such that the exercise of jurisdiction would not offend " 'traditional notions of fair play and substantial justice' " [citation].' " (*Muckle, supra,* 102 Cal.App.4th at p. 226, fn. omitted.)

Here, as Dhillon points out, personal jurisdiction over Mangat is proper on at least two of these independent grounds (apart from his domicile). First, Mangat was personally served with summons on July 15, 2019, while he was physically present in California (with service occurring at the superior court). Second, Mangat consented to jurisdiction by filing a response to Dhillon's petition, thus making a general appearance in the action, rather than filing a motion to quash service of summons on the basis that personal jurisdiction was lacking. (Cal. Rules of Court, rule 5.62(b) [response to petition is deemed a general appearance]; *In re Marriage of Obrecht* (2016) 245 Cal.App.4th 1, 8 (*Obrecht*) ["By generally appearing, a defendant relinquishes all objections based on lack of personal jurisdiction or defective process or service of process."].)

### 2. In Rem Jurisdiction and Domicile

Mangat does not expressly argue the trial court lacked in rem jurisdiction to terminate marital status, but he does challenge the court's finding as to the related matter of domicile. There is no basis for reversal.

The requirement of " ' "in rem" jurisdiction over the marital "res" to terminate marital status' " is expressed in section 2320, subdivision (a).

11

(*Obrecht*, *supra*, 245 Cal.App.4th at p. 13.) Section 2320, subdivision (a) states in relevant part that "a judgment of dissolution of marriage may not be entered unless one of the parties to the marriage has been a resident of this state for six months and of the county in which the proceeding is filed for three months next preceding the filing of the petition."

For purposes of section 2320, subdivision (a), "residency means *domicile* [citation], which requires both physical presence and an intent to remain 'indefinitely' [citations]. 'Whether the residency requirement has been met is a question of fact and the burden of establishing residence is on the party asserting it.' " (*Obrecht*, *supra*, 245 Cal.App.4th at pp. 13–14.)[7] Neither physical presence in nor absence from the alleged domiciliary state

_____

[7] In his reply brief, Mangat notes that a person's residence is not always synonymous with their domicile. (*In re Marriage of Amezquita & Archuleta* (2002) 101 Cal.App.4th 1415, 1419 [" 'Courts and legal writers usually distinguish "domicile" and "residence," so that "domicile" is the one location with which for legal purposes a person is considered to have the most settled and permanent connection, the place where he intends to remain and to which, whenever he is absent, he has the intention of returning, but which the law may also assign to him constructively; whereas "residence" connotes any factual place of abode of some permanency, more than a mere temporary sojourn. "Domicile" normally is the more comprehensive term, in that it includes both the *act* of residence and an *intention* to remain; a person may have only one domicile at a given time, but he may have more than one physical residence separate from his domicile, and at the same time. [Citations.] But statutes do not always make this distinction in the employment of those words. They frequently use "residence" and "resident" in the legal meaning of "domicile" and "domiciliary," and at other times in the meaning of factual residence or in still other shades of meaning.' "].) But as noted, for purposes of section 2320, subdivision (a), residency *does* mean domicile. (*Obrecht*, *supra*, 245 Cal.App.4th at pp. 13–14; accord, *In re Marriage of Amezquita & Archuleta, supra,* 101 Cal.App.4th at p. 1419 ["In the context of jurisdiction to enter a judgment dissolving a marriage, '[i]t is well settled in California that the term "residence" . . . is synonymous with "domicile." ' "].)

12

is alone dispositive.  (See *In re Marriage of Amezquita & Archuleta, supra,* 101 Cal.App.4th at p. 1421.)  "Several factors may be probative of the essential 'intent to remain'—including the situs of":  "home ownership/current residence"; "bank accounts"; "voter registration"; "driver's license and car registration"; "club, church and political memberships"; "tax return filings"; "mail receipt"; and "business affiliations."  (Hogoboom and King, California Practice Guide: Family Law (The Rutter Group 2024) paragraph 3:72.)

Here, the court had in rem jurisdiction to dissolve the parties' marriage.  First, as the trial court noted and as Dhillon points out in her appellate brief, Mangat expressly alleged in his response to the dissolution petition that *both* he and Dhillon had been residents of California for at least six months and of Alameda County for at least three months before the filing of the petition.  Mangat thus acknowledged in his response that section 2320, subdivision (a)'s residency requirement was satisfied.  He also forfeited the issue by failing to move to quash service of summons based on a claim that the statutory residence requirement had not been met.  (Cal. Rules of Court, rule 5.63(b)(3), (e); see *In re Marriage of Tucker* (1991) 226 Cal.App.3d 1249, 1256–1257.)

In any event, Mangat has not shown the trial court's factual determination as to domicile is not supported by substantial evidence.  (*In re Marriage of Tucker, supra,* 226 Cal.App.3d at p. 1259 [reviewing domicile determination for substantial evidence].)  As outlined by the trial court, Dhillon provided testimony (which the court found credible) that her domicile has always been the United States.  "The United States is the place of her birth, her upbringing, all her education (undergraduate, graduate, and postdoctoral), her lifelong family and social networks, the country

13

where she votes and owns property, and her place of getting married (both a civil ceremony and religious ceremony) and getting divorced." Dhillon is a United States citizen, and the parties' two children are both United States citizens. Dhillon "applied for a Birth Certificate Abroad for the parties' daughter, who was born in India, to obtain her United States citizenship."

Dhillon testified that, during the family's stays in India, there was always a plan to return to the United States. The family first moved to India in November 2003, after Dhillon obtained a one-year World Health Organization research fellowship there. The planned one-year stay was extended by their daughter's birth in July 2005 (six months after the end of the fellowship), and the family moved back to the United States in May 2006 when their daughter was 10 months old. The parties moved their family, household belongings, and furniture to Boston, Massachusetts, where they lived and worked until 2009.

As summarized by the court, "The decision to go back to India came in 2009, based on emerging farm property difficulties for [Mangat], job opportunities and an opportunity to provide cultural connections for their daughter, while the farm issues could be sorted out. The move to India was always meant to be temporary." While this second stay turned out to be longer than originally planned (i.e., until the family's 2018 move to Berkeley), Dhillon did not change her domicile to India.

The court could also rely on Dhillon's testimony to support its finding that Mangat was domiciled in the United States, rather than India. Dhillon's testimony as to the parties' joint plans to return to the United States after each stay in India, in particular that they planned to return from the second stay after their daughter completed her primary school years in India, supports this finding. Dhillon also testified (again as

14

summarized by the trial court) that Mangat "lived in the United States for approximately twelve (12) years after college, during which time he obtained two graduate degrees, worked at 4-5 different companies, set up a retirement account, a checking account, a savings account, investment accounts, applied for a permanent residency 'green card' for United States citizenship, got married in a civil court ceremony (to a United States citizen), and bought a car that he maintains and insures to this day in the United States. He also maintains the same 415-area code phone number that he has had for twenty (20) plus years, even while in New Delhi, India."

Dhillon testified that the parties have joint checking, savings, and investment accounts in the United States, but no jointly titled accounts in India. They own jointly titled property in the United States, but not in India. The parties and both their children are United States citizens. They have voted in United States elections but not in Indian elections. Both Dhillon and Mangat have filed taxes for more years in the United States than in India. There was ample evidence from which the court reasonably could conclude the parties' domicile was the United States, rather than India.

In his appellate briefing, Mangat presents no basis for this court to ignore the above evidence or to reverse the trial court's well-supported domicile finding. Instead, Mangat just argues that *other* facts—such as his birth and education in India, and the periods of time he has resided there— support his position that his domicile is and was India. He also suggests his United States citizenship and his voting record here should not be given significant weight. But as outlined above, the trial court in making its domicile finding relied on evidence of the parties' many relevant ties to the United States (not just the few that Mangat takes issue with). And in any

15

event, Mangat's identification of some evidence that might have supported a contrary finding on domicile provides no basis for reversal.[8]

### 3. Subject Matter Jurisdiction

In a marital dissolution proceeding (where, as here, a California trial court has jurisdiction over the parties), the court has subject matter jurisdiction to address the division of the parties' property. (§ 2010, subd. (e).) Mangat does not challenge this rule as a general matter, but he asserts at one point in his briefing that, as to property located in India, only Indian courts have "subject matter jurisdiction and territorial jurisdiction." Elsewhere he acknowledges a California court has *jurisdiction* to adjudicate rights to property located outside California, but he contends that "the issue of choice of law is another matter altogether," i.e., he contends California law should not be applied in that circumstance. We turn to Mangat's choice-of-law argument now.

### B. *Application of California Law*

Mangat contends the court should have applied Indian law, rather than California law, in characterizing and dividing property located in India. He suggests in part that the court should not have found that any property in India was community property. We find no error.

---

[8] Mangat also suggests Indian law treats the question of domicile in a manner that is more favorable to his position. Putting aside the question whether Mangat has accurately described Indian law on this point (a question we do not address), he provides no basis for his suggestion the trial court should have applied Indian law to the domicile question. And in any event, the basis of Mangat's argument under Indian law (as under California law) appears to be nothing more than a restatement of his view that the court should not have credited Dhillon's testimony. We will not second-guess the court's considered credibility findings.

16

"With regard to property rights, the court generally looks to the domicile of the parties at the time the property was acquired to characterize it as separate or community for the purposes of division upon a dissolution of the marital status. [Citation.] '[M]arital interests in money and property acquired during a marriage are governed by the law of the domicile at the time of their acquisition, even when such money and property is used to purchase real property in another state. [Citations.]' [Citation.] California law provides that '[e]xcept as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property.' (Fam. Code, § 760.)" (*Muckle, supra*, 102 Cal.App.4th at pp. 225–226; see Fam. Code, § 2660.)

Although a California court cannot directly affect title to non-California property, it has the power to determine the community's interest in such property and divide it as part of the marital dissolution proceedings. (See *In re Marriage of Fink* (1979) 25 Cal.3d 877, 883–884 [property in another state]; *In re Marriage of Ben-Yehoshua* (1979) 91 Cal.App.3d 259, 269 [property in another country].) "It is recognized that California cannot enter a decree directly affecting title or interest in real property outside its borders. [Citation.] It may, however, establish and declare the interests in such property and enter orders in aid of such declaration requiring the parties to execute conveyances in compliance therewith." (*In re Marriage of Ben-Yehoshua*, at p. 269.)

Here, as noted, the court found that one piece of real property in India (the Gurgaon property, which is titled in Mangat's name) was community property because it was purchased during the marriage with community funds. The court awarded it to Mangat and valued it at $292,566, but

17

required that Mangat make an equalizing payment to Dhillon of $146,283. The court did not purport to alter how title to the Gurgaon property is held. The court also ruled certain financial accounts in India were community property but did not direct any change in how the accounts are held, instead ordering Mangat to make a final equalizing payment to Dhillon after accounting for all assets.

Mangat has shown no error. As outlined, he is incorrect in suggesting property outside California cannot be community property. And, for the reasons discussed above, we reject his challenge to the court's finding the parties were domiciled in California prior to dissolution.[9]

### C. *Miscellaneous Arguments*

At the end of his opening appellate brief, Mangat presents three short arguments, all of which are meritless. First, Mangat has not shown the court erred by considering the written closing statement submitted by his counsel rather than the one Mangat submitted later, after his counsel had withdrawn and months after the submission deadline set by the court. Second, Mangat's brief assertion that proceedings pertaining to child custody are pending in India provides no basis to reverse any portion of the trial court's judgment here. Finally, a handwritten notation on the judgment (attacked by Mangat as somehow showing an improper or premature assumption of jurisdiction) just confirms the court obtained jurisdiction over Mangat on July 15, 2019, the date he was served with summons. We find no error as to any of these points.

---

[9] Mangat does not develop a more specific argument as to the parties' domicile at the time the Gurgaon property was acquired.

18

# III. DISPOSITION

The trial court's judgment entered on March 19, 2024, is affirmed. Dhillon shall recover her costs on appeal.

STREETER, Acting P. J.

WE CONCUR:

GOLDMAN, J.
SIGGINS, J.*

---

*\* Retired Presiding Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.*